IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

BRYAN PETER FOSHAY,
*Appellant.*

No. 2 CA-CR 2014-0252
Filed March 23, 2016

---

Appeal from the Superior Court in Pima County
No. CR20124578001
The Honorable Jane L. Eikleberry, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Diane Leigh Hunt, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By Frank P. Leto, Assistant Public Defender, Tucson
*Counsel for Appellant*

## OPINION

Presiding Judge Howard authored the opinion of the Court, in which Judge Espinosa and Judge Staring concurred.

H O W A R D, Presiding Judge:

**¶1** After a jury trial, Bryan Foshay was convicted of first-degree murder. On appeal, he argues the trial court erred first by allowing a toolmark expert, Rocky Edwards, to testify; second, by allowing Edwards's report to be admitted in its entirety; third, by allowing Edwards to testify regarding another expert's analysis; and finally, by precluding evidence that the victim had previously sold drugs and had methamphetamine in his system when he was killed. Because the trial court did not err, we affirm.

### Factual and Procedural Background

**¶2** We view the facts in the light most favorable to sustaining Foshay's conviction. *State v. Ortiz*, 238 Ariz. 329, ¶ 2, 360 P.3d 125, 129 (App. 2015). The victim, B.B., was killed in his apartment by a gunshot wound to the head. During the ensuing investigation, police found that Foshay had exchanged electronic messages with B.B. the night of the murder. These messages suggested that Foshay and B.B. were involved in an illegal enterprise at one point and that B.B. was involved with law enforcement in some capacity, at the time of the text messages. In one message, Foshay asked B.B. to open the door to his apartment on the night of the murder. Based on these messages, police obtained a warrant to search Foshay's home. They found a .40 caliber weapon and some "Winchester PDX" ammunition as a result of that search.

**¶3** At trial, Edwards opined that the bullet which killed B.B. was shot from Foshay's gun. Foshay mounted a third-party-culpability defense which centered on testimony that B.B. had been pressured into providing information and testimony for law enforcement. Foshay claimed that one of a number of other

individuals who had been engaged in the drug trade with B.B. had killed him.

**¶4**        The jury rejected the defense's theory of the case and, as noted above, found Foshay guilty of first-degree murder. The trial court sentenced him to a life term with the possibility of release after twenty-five years. Foshay appealed from the judgment and sentence. This court has jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

## *Daubert*[1] **Analysis**

**¶5**        Foshay first argues, on several related grounds, that the trial court erred by admitting Edwards's testimony which was based in part on the use of three-dimensional ("3-D") imaging software and "confocal microscopic analysis."[2] "We review a trial court's ruling to admit expert testimony for an abuse of discretion." *State v.*

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[2] Foshay also brought a general challenge to toolmark analysis, which was similar to that considered and rejected by this court in *State v. Romero*, 236 Ariz. 451, ¶ 20, 341 P.3d 493, 499 (App. 2014), *vacated on other grounds*, ___ Ariz. ___, ¶ 31, 365 P.3d 358, 364 (2016). That case was recently considered by the Arizona Supreme Court, but it did not grant review on the general challenge to toolmark analysis, and Foshay has abandoned this argument in his reply brief. *Romero*, ___ Ariz. ___, ¶ 1, 365 P.3d at 360.

Foshay further mentions his constitutional right to a fair trial under the Fourteenth Amendment to the United States Constitution but does not develop any separate argument concerning it. Therefore, any such argument is waived. *See* Ariz. R. Crim. P. 31.13(c)(1) ("The appellant's brief shall include . . . [a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."); *State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) ("Failure to argue a claim on appeal constitutes waiver of that claim.").

*Favela*, 234 Ariz. 433, ¶ 4, 323 P.3d 716, 717 (App. 2014). In reviewing a trial court's ruling after a hearing on a motion to preclude expert testimony, we consider only that evidence presented at the hearing, viewing it in the light most favorable to upholding the order. *Cf. State v. Carlson*, 228 Ariz. 343, ¶ 2, 266 P.3d 369, 370 (App. 2011) (reviewing motion to suppress); *see also State v. Huerstel*, 206 Ariz. 93, ¶ 62, 75 P.3d 698, 712 (2003) (reviewing voluntariness of statement).

**¶6** In order for expert witness testimony to be admissible, the party proposing the testimony must show, inter alia, that first, "the witness is qualified and [second, that] the expert's 'scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence.'" *State v. Romero*, ___ Ariz. ___, ¶ 12, 365 P.3d 358, 361 (2016), *quoting* Ariz. R. Evid. 702. The proponent must also demonstrate that "the testimony is based on sufficient facts or data; . . . the testimony is the product of reliable principles and methods; . . . and the expert has reliably applied the principles and methods to the facts of the case." Ariz. R. Evid. 702. "Under Rule 702, a witness may be qualified based on 'knowledge, skill, experience, training, or education.'" *Romero*, ___ Ariz. ___, ¶ 17, 365 P.3d at 362, *quoting* Ariz. R. Evid. 702. "For a witness to be qualified as an expert, he or she need only possess 'skill and knowledge superior to that of [people] in general.'" *Id.*, *quoting State v. Girdler*, 138 Ariz. 482, 490, 675 P.2d 1301, 1309 (1983) (alteration in *Romero*).

**¶7** The following facts were adduced at the *Daubert* hearing. The Tucson Police Department ("TPD") performed an initial analysis of the weapon and ammunition found in Foshay's home. Using a standard comparison microscope and the six test-fired bullets, the TPD analysts could not determine whether the autopsy bullet recovered from B.B.'s body matched the weapon found in Foshay's home.

**¶8** Foshay's gun, the autopsy bullet, and the TPD "test fires" were then sent to Rocky Edwards, a toolmark analysis expert at the Santa Ana Police Department. Edwards conducted additional test fires and obtained additional bullet samples. He also conducted an analysis aided by a "confocal" microscope which utilizes 3-D imaging. Edwards concluded that Foshay's gun had fired the autopsy bullet. Based on his analysis using both scopes, Edwards

found "areas of agreement" between the autopsy bullet and the test fires he compared.  But he emphasized that

> an identification . . . has to be done with a comparison microscope.  That's the only standard that's accepted in the United States, and that's the standard [he] used in this case and in every case that [he had] ever done in 3-D.  So [the confocal microscope was] only used as a supplement, not used as the main scope.

The report and presentation that Edwards prepared in this case "include[d] photographs both [from a] comparison microscope and [a] confocal" microscope.

**¶9**        Foshay argues the trial court abused its discretion when it found that Edwards was qualified to employ the 3-D imaging software.  As Foshay has conceded both at trial and on appeal, Edwards is a qualified toolmark analyst.  The court found specifically that "using this 3-D confocal microscopy is just a new tool to utilize the same principles."  And Edwards's testimony showed a working knowledge of how this technology functioned, demonstrating he was qualified by knowledge and experience. Ariz. R. Evid. 702; *Romero*, ___ Ariz. ___, ¶ 17, 365 P.3d at 362.  Thus, the court did not err when it found that Edwards was qualified to testify as to his analyses aided by the new technology.  *See Romero*, ___ Ariz. ___, ¶ 17, 365 P.3d at 362.

**¶10**        Foshay further argues the trial court erred in admitting Edwards's testimony because Edwards did not have personal knowledge about how the 3-D mapping software functioned and, thus, the state failed to present sufficient evidence to allow the court to find the new methodology reliable.  Rule 702 requires that expert testimony be the product of reliable principles and methods and that the expert has reliably applied the principles.  Ariz. R. Evid. 702(c), (d); *see also State v. Romero*, 236 Ariz. 451, ¶ 11, 341 P.3d 493, 497 (App. 2014), *vacated on other grounds*, ___ Ariz. ___, ¶ 31, 365 P.3d at 364.    Arizona courts recognize five non-exclusive factors for determining reliability:

(1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique or theory is generally accepted within the relevant scientific community; (4) the known or potential rate of error of the technique or theory when applied; and (5) the existence and maintenance of standards controlling application of the technique.

*State ex rel. Montgomery v. Miller*, 234 Ariz. 289, ¶ 24, 321 P.3d 454, 464 (App. 2014).

**¶11**     As noted above, Edwards testified he made the match with the traditional comparison microscope and that the confocal microscope and 3-D imaging only allowed him to see a clearer image. Accordingly, specific details on how the confocal microscope and 3-D imaging software functioned were not relevant to whether Edwards had applied reliable principles and methods.

**¶12**     Additionally, although Edwards conceded he was unaware of how the software functioned and had only used this technology four times, he was able to testify in some detail regarding how the technology worked, its history, and a study about the effectiveness of toolmark analyses conducted with this technology. In this study, researchers attempted to validate the use of 3-D systems by having 623 participants in thirty-five countries analyze 600 rounds fired out of ten consecutively manufactured weapons. Only two of the examiners could not make identifications, and those examiners were relatively untrained. All other examiners were able to make valid identifications.

**¶13**     Thus, the trial court reasonably could have found that the 3-D imaging and confocal microscope methodology was testable, was subjected to peer review, was generally accepted in the field, and was studied sufficiently to establish known or potential rates of error. *Montgomery*, 234 Ariz. 289, ¶ 24, 321 P.3d at 464. Accordingly,

the 3-D imaging and confocal microscope methodology was capable of passing Rule 702's reliability test.[3]

**¶14**　　In sum, Edwards testified the 3-D imaging and confocal microscope merely enabled him to better see the marks which were the basis of his analysis. And no evidence indicated that the software and microscope somehow manipulated the image to allow a match between bullets where none existed. Any issues concerning the use of the 3-D imaging and confocal microscope were proper subjects for cross-examination, but did not prevent admission of the evidence. *See Romero*, ___ Ariz. ___, ¶ 27, 365 P.3d at 364 ("'Cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"), *quoting State v. Bernstein*, 237 Ariz. 226, ¶ 22, 349 P.3d 200, 205 (2015); *see also* Ariz. R. Evid. 702 cmt. (2012). The trial court reasonably could have found that Edwards reliably applied the principles and methods of toolmark comparison under the facts of this case.

## Admission of Edwards's Report

**¶15**　　Foshay next argues the trial court erred by admitting Edwards's written report and a corresponding "interactive CD" because these materials are hearsay and contained Edwards's statement concerning his certainty as to his conclusion.[4] The state responds that Foshay failed to object adequately to the admission of

---

[3] Edwards specifically testified there were no proficiency testing standards for the 3-D analysis. But proficiency testing exists for toolmark examination. And, even if the fifth factor was not met, the trial court did not abuse its discretion by admitting this testimony. *Montgomery*, 234 Ariz. 289, ¶ 25, 321 P.3d at 464 ("No single *Daubert* factor is dispositive of the reliability of an expert's testimony.").

[4] Foshay again mentions his right to a fair trial under the Sixth and Fourteenth Amendments without argument. This issue is waived. *See* Ariz. R. Crim. P. 31.13(c)(1); *Bolton*, 182 Ariz. at 298, 896 P.2d at 838.

the report below, thereby forfeiting this argument for all but fundamental error.

¶16        "A party must make a specific and timely objection at trial to the admission of certain evidence in order to preserve that issue for appeal." *State v. Hamilton*, 177 Ariz. 403, 408, 868 P.2d 986, 991 (App. 1993); Ariz. R. Evid. 103(a).   "[A]n objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other grounds." *Id.*

¶17        In this case, when the state sought to admit the written report, Foshay timely objected on the ground the report was "cumulative."  When the state sought to admit the interactive CD, Foshay objected on the same ground he had raised at the *Daubert* hearing, which was relevance.

¶18        On appeal, Foshay has challenged the admission of the report and CD, asserting that a report "prepared out of court is generally inadmissible under [Rule 702]" and "is also hearsay," and that the report contained statements about Edwards's certainty. These arguments are based on different grounds from the objections at trial.  Thus, Foshay did not make a timely and specific objection at the *Daubert* hearing or at trial on the same grounds as those argued on appeal and he has thus forfeited these arguments.  *See State v. Lopez*, 217 Ariz. 433, ¶ 6, 175 P.3d 682, 684 (App. 2008); *Hamilton*, 177 Ariz. at 408, 868 P.2d at 991; *see also* Ariz. R. Evid. 103(a).

¶19        Foshay responds, however, that this line of reasoning "ignores the particular objection made by defense counsel in his written motion to preclude."  "Generally, a defendant preserves for appeal any issues raised in a motion in limine and ruled upon without the need for further objection at trial."  *State v. Duran*, 233 Ariz. 310, ¶ 7, 312 P.3d 109, 110 (2013).

¶20        In his motion to preclude Edwards's testimony and report, Foshay attempted to show that Edwards's opinion was not compliant with Rule 702's requirements.  The section of the motion to which Foshay refers occurs before the "Argument" section and is titled "Federal district courts have carefully scrutinized and limited firearms identification evidence under the reliability criterion of

*Daubert* due to its lack of scientific foundation." He noted that federal courts had limited firearms identification evidence such that some experts can only state their opinions "without any characterization as to the degree of certainty." *United States v. Willock*, 696 F. Supp. 2d 536, 549 (D. Md. 2010).

**¶21** Foshay did not argue that the report and CD, as opposed to Edwards's testimony, should be excluded on the basis that Edwards expressed an elevated level of certainty about his conclusions and he did not request that limitation in his request for relief. Further, Foshay did not argue in the motion to preclude, as he does in his opening brief, that the written report of an expert is generally inadmissible or that his report was hearsay. Thus, while Foshay did request that the trial court exclude the report and CD, he did so on different grounds.

**¶22** Foshay's objection did not "give[] the [trial] court an opportunity to correct any error and allow[] opposing counsel a chance to 'obviate the objection.'" *Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d at 683, *quoting State v. Rutledge*, 205 Ariz. 7, ¶ 30, 66 P.3d 50, 56 (2003). Consequently, Foshay has forfeited his arguments on appeal, and we review only for fundamental error. *Hamilton*, 177 Ariz. at 408, 868 P.2d at 991; *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005).

**¶23** To prevail under fundamental error review, "a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* ¶ 20. Fundamental error review "involves a fact-intensive inquiry" and the "showing a defendant must make varies." *Id.* ¶ 26. To establish prejudice, "a defendant must show that, but for the error, a reasonable fact-finder 'could have reached a different result.'" *See State v. Joyner*, 215 Ariz. 134, ¶ 31, 158 P.3d 263, 273 (App. 2007), *quoting Henderson*, 210 Ariz. 561, ¶ 27, 115 P.3d at 609.

**¶24** We need not determine whether the admission of the report constituted fundamental error because Foshay cannot show prejudice. He argues that admission of the report and CD prejudiced him because the written report "went much further" than Edwards's oral testimony about his certainty that the bullets

matched Foshay's weapon. In the report, Edwards explained "the likelihood that another firearm could have produced these marks is so remote as to be considered a practical impossibility." At trial, Edwards testified "the autopsy bullet was fired by the Ruger pistol that was submitted for examination." No evidence suggested it came from any other weapon. The difference between Edwards's testimony at trial and his statement in the report would not have made a practical difference to the jury.

¶25 Foshay also claims admitting the written report reinforced Edwards's testimony. But the report was largely repetitive of Edwards's trial testimony and Foshay has not shown how he was prejudiced. Assuming admission of the reports was both error and fundamental, under either or both grounds argued here, the jury would have still found Foshay guilty in the absence of the reports. Foshay was not prejudiced.

## Testimony Regarding Ward's Opinion

¶26 Foshay next argues the trial court violated his rights under the Confrontation Clause by admitting Edwards's testimony regarding Troy Ward, a toolmark examiner who confirmed Edwards's opinion.[5] He also claims that Ward's opinion should have been excluded as hearsay. Foshay further argues the trial court erred in denying his motion for a new trial on the same ground.

¶27 The state contends Foshay did not properly object to this portion of Edwards's testimony, and thus Foshay's argument is forfeited for all but fundamental error, pursuant to *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607. Although Foshay's counsel failed to use the word "object" or the phrase "Confrontation Clause," a specific word is not required to make an objection or to preserve an issue for appeal. *See Rutledge*, 205 Ariz. 7, ¶ 30, 66 P.3d at 56 ("'The purpose of an objection is to permit the trial court to rectify possible

---

[5]Foshay again mentions his right to a fair trial under the Fourteenth Amendment without argument. This issue is waived. *See* Ariz. R. Crim. P. 31.13(c)(1); *Bolton*, 182 Ariz. at 298, 896 P.2d at 838.

error, and to enable the opposition to obviate the objection if possible.'"), *quoting State v. Hoffman*, 78 Ariz. 319, 325, 279 P.2d 898, 901 (1955).

**¶28** Here, Foshay objected to Edwards's testimony regarding Ward's analysis on the ground that his testimony was hearsay and also claiming that Foshay had "no way to confront that person at this point." Thus, he effectively objected to the instruction below, and we will review the merits of his claim. *See Henderson*, 210 Ariz. 561, ¶ 18, 115 P.3d at 607 (where defendant objected below, burden is on state to prove harmless error).

**¶29** We review "'challenges to admissibility based on the Confrontation Clause'" de novo. *Ortiz*, 238 Ariz. 329, ¶ 27, 360 P.3d at 133, *quoting State v. Bennett*, 216 Ariz. 15, ¶ 4, 162 P.3d 654, 656 (App. 2007). "We review a trial court's ruling on the admissibility of evidence for a clear abuse of discretion." *State v. King*, 213 Ariz. 632, ¶ 7, 146 P.3d 1274, 1277 (App. 2006).

**¶30** The Sixth Amendment "'prohibits the introduction of testimonial statements by a nontestifying witness.'" *Ortiz*, 238 Ariz. 329, ¶ 31, 360 P.3d at 133, *quoting Ohio v. Clark*, ___ U.S. ___, ___, 135 S. Ct. 2173, 2179 (2015). "Testimonial evidence is '*ex parte* in-court testimony or its functional equivalent . . . such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'" *Id.*, *quoting State v. Medina*, 232 Ariz. 391, ¶ 54, 306 P.3d 48, 62 (2013) (alteration in *Ortiz*). "Yet, testimony that is not admitted to prove its truth is not hearsay and does not violate the Confrontation Clause." *State v. Tucker*, 215 Ariz. 298, ¶ 61, 160 P.3d 177, 194 (2007), *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *see also Williams v. Illinois*, ___ U.S. ___, ___, 132 S. Ct. 2221, 2261 (2012) (Thomas, J. concurring) (identifying primary purpose test and solemnity test).

**¶31** "A testifying expert may rely on the opinions of other experts if such reliance is 'the kind of material on which experts in

the field base their opinions.'" *State v. Lundstrom*, 161 Ariz. 141, 147, 776 P.2d 1067, 1073 (1989), *quoting Lewis v. Rego*, 757 F.2d 66, 74 (3d Cir. 1985). That expert may then, in turn, "testify as to the substance of another expert's opinion if the testifying expert reasonably relied on that other opinion in forming his own opinion." *Id.* at 148, 776 P.2d at 1074. The other expert's opinion can be admitted as non-hearsay because it is admissible for the limited purpose of showing the bases of the testifying expert's opinion. *Id.*

**¶32**        Edwards testified that Ward, an examiner from the Long Beach Police Department, did a second examination and technical review of Edwards's toolmark analysis. Edwards explained that toolmark analyses typically are subjected to "peer review by another qualified firearms examiner." He further described how the normal procedure for his analysis required that, once he had found sufficient agreement between the autopsy bullet and the test fires, he would provide his report to another examiner who would perform a second examination. *See also United States v. Monteiro*, 407 F. Supp. 2d 351, 368-69 (D. Mass 2006) (it is "the standard in the field to have a second examiner independently review the findings of the first examiner"). If the second expert came to the same conclusion as Edwards, it would allow Edwards to conclude his findings were accurate.

**¶33**        Thus, because peer review is part of the toolmark analysis process, Ward's opinion was offered only as a basis for Edwards's testimony and not to prove the truth of that opinion. *See Lundstrom*, 161 Ariz. at 147, 776 P.2d at 1073. And Ward's opinion did not have the solemnity associated with trial testimony. *Williams*, ___ U.S. at ___, 132 S. Ct. at 2260 (Thomas, J. concurring). Edwards's statement about Ward's opinion is therefore not hearsay, *see Tucker*, 215 Ariz. 298, ¶ 60, 160 P.3d at 194, and is not barred by the Confrontation Clause, *see Williams*, ___ U.S. at ___, 132 S. Ct. at 2260 (Thomas, J. concurring); *see also Crawford*, 541 U.S. at 59 n.9. Accordingly, the trial court did not err when it admitted Edwards's testimony regarding Ward's opinion.

## Preclusion of Evidence of Victim's Drug Use

¶34      Finally, Foshay argues the trial court erred by precluding evidence that victim B.B.'s autopsy toxicology report had indicated the presence of methamphetamine and that B.B. had been previously involved in a drug sale. He argues that admitting such evidence would "help establish the defense theory that someone other than [Foshay] had motive and opportunity to commit the offense."[6] As mentioned above, "[w]e review a trial court's ruling on the admissibility of evidence for a clear abuse of discretion," *King*, 213 Ariz. 632, ¶ 7, 146 P.3d at 1277, but, constitutional violations are reviewed de novo, *Fragoso v. Fell*, 210 Ariz. 427, ¶ 13, 111 P.3d 1027, 1032 (App. 2005).

¶35      Irrelevant evidence is inadmissible. Ariz. R. Evid. 402. Relevant evidence is that which has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence'" and "[t]he standard of relevance is not particularly high." *State v. Fish*, 222 Ariz. 109, ¶ 48, 213 P.3d 258, 274 (App. 2009), *quoting* Ariz. R. Evid. 401. Relevant evidence can be inadmissible if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403. "Because the trial court is best situated to conduct the Rule 403 balance, we will reverse its ruling only for abuse of discretion." *State v. Cañez*, 202 Ariz. 133, ¶ 61, 42 P.3d 564, 584 (2002).

¶36      Criminal defendants are constitutionally guaranteed "'a meaningful opportunity to present a complete defense.'" *State v. Machado*, 224 Ariz. 343, ¶ 12, 230 P.3d 1158, 1166 (App. 2010), *quoting Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986),

---

[6]Foshay also argues that this evidence would tend to show B.B. "was a risk taker, rebutting the State's theory that [B.B.] opened the door to Bryan Foshay" and that B.B. was "a risk taker who engaged in drug sales and thus may have opened the door to someone other than Bryan Foshay." Because Foshay did not raise this risk-taker justification in his argument below, it is forfeited. *See Hamilton*, 177 Ariz. at 408, 868 P.2d at 991; Ariz. R. Evid. 103(a).

*abrogation on other grounds as recognized by State v. Nottingham*, 231
Ariz. 21, n.4, 289 P.3d 949, 954 n.4 (App. 2012). A defendant's
defense "generally must comply" with the rules of evidence, but
those rules "'may not be applied mechanistically to defeat the ends
of justice.'" *Id.* ¶ 13, *quoting Chambers v. Mississippi*, 410 U.S. 284, 302
(1973). The right to conduct a complete defense includes the right to
cross-examine witnesses. *State v. Abdi*, 226 Ariz. 361, ¶ 27, 248 P.3d
209, 216 (App. 2007). That right, however, "must be kept within
reasonable bounds" and the test for reasonableness is "whether the
defendant has been denied the opportunity of presenting to the trier
of fact information which bears either on the issues in the case or on
the credibility of the witness." *State v. Fleming*, 117 Ariz. 122, 125,
571 P.2d 268, 271 (1977).

¶37        Before trial, the state moved to preclude evidence that
B.B. had been involved in a hand-to-hand drug sale,[7] arguing it was
irrelevant because it took place two years before B.B.'s murder and
was not connected to the murder. The state also contended the
evidence was more prejudicial than probative under Rule 403.
Foshay, who did not file a written response, argued the drug sale
was relevant because it explained why B.B. would be motivated to
work as a confidential informant. The court did not admit the
evidence of the prior drug sale although evidence that B.B. was an
informant was admitted.

¶38        At trial, Foshay cross-examined David Winston, the
medical examiner who conducted B.B.'s autopsy, and attempted to
elicit testimony regarding the presence of methamphetamine in the
autopsy results. The state's attorney objected on relevance grounds.
Foshay argued the evidence was relevant to a third-party-culpability
defense, suggesting the victim's drug use indicated other
individuals might be willing to kill him. The trial court ruled the
proposed testimony was both irrelevant and highly prejudicial.

¶39        The trial court was correct in concluding this evidence
was irrelevant. As opposed to the fact that he had worked as an

---

[7]We note that significant other evidence was introduced at
trial regarding B.B.'s involvement with the drug trade.

informant, B.B.'s motivation to do so did not make it more likely that someone other than Foshay had killed him. And Foshay has not shown any connection between B.B.'s use of methamphetamine before his death and anyone's desire to kill him. As the court noted, the use of methamphetamine and the sale of drugs two years before his death do not tend to make it more likely that someone other than Foshay murdered B.B. *See* Ariz. R. Evid. 401. The court did not abuse its discretion in excluding this evidence.

¶40        The trial court also correctly found that the probative value of the victim's personal drug use or remote participation in a drug sale did not outweigh the prejudicial effect. *See Cañez*, 202 Ariz. 133, ¶ 61, 42 P.3d at 584. Such evidence is not sufficiently probative of third-party culpability to outweigh the prejudice of portraying B.B. as a drug dealer and user. *See* Ariz. R. Evid. 403.

¶41        Finally, Foshay's right to conduct a complete defense and cross-examination was not implicated by the exclusion of this evidence. In light of the evidence that was ruled admissible at trial, Foshay was not denied "the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of the witness." *Fleming*, 117 Ariz. at 125, 571 P.2d at 271. The exclusion of irrelevant and prejudicial evidence is not a mechanistic application of the rules of evidence. *See Machado*, 224 Ariz. 343, ¶ 13, 230 P.3d at 1166.

## Disposition

¶42        Based on the foregoing, we affirm Foshay's conviction and sentence.