NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ARTHUR RAY MEEDS, *Appellant*.

No. 1 CA-CR 18-0426
FILED 6-27-2019

Appeal from the Superior Court in Maricopa County
No. CR 2017-001601-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Ballecer & Segal PC, Phoenix
By Natalee Segal
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**T H U M M A**, Chief Judge:

¶1 Defendant Arthur Meeds appeals from his convictions and sentences for various offenses arising out of a home invasion. Meeds argues the prosecutor erred by repeatedly commenting, during closing arguments, on Meeds' failure to testify. Because the record does not show as a factual matter that the jury naturally and necessarily would have construed the closing argument as commenting on Meeds' invocation of his right not to testify, and because Meeds has not shown fundamental error resulting in prejudice, his convictions and resulting sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 Early one morning in May 2014, Meeds and three others invaded a home in Phoenix. Five individuals were in the home at the time: D.D., L.S., their young child, L.S.'s sister C.S., and C.S.'s child.

¶3 After entering the home through a back door, Meeds struck D.D. in the head and, after D.D. woke up, demanded money. Meeds held D.D. at gunpoint, forcing D.D. to try to open a safe in the garage. At one point, an accomplice held D.D.'s young son, crying, nearby. Meanwhile, Meeds' accomplices bound C.S. and L.S. with zip-ties and held them at gunpoint. Although unsuccessful in their efforts to open the safe in the garage and another in the home, Meeds and his accomplices took L.S.'s passport and at least two of D.D.'s watches and, as police officers arrived, they fled. Officers, who had responded to an alarm triggered inside the home, chased, caught and detained Meeds.

¶4 The State charged Meeds with one count of conspiracy to commit burglary in the first degree, a class 2 felony; one count of burglary in the first degree, a class 2 felony; one count of aggravated assault of D.D., a class 3 felony; one count of kidnapping as to each adult victim (D.D., L.S. and C.S.), each a class 2 felony; one count of kidnapping as to each child, each a class 2 felony; and one count of armed robbery of each adult victim (D.D., L.S. and C.S.), each a class 2 felony.

¶5        Meeds and one accomplice, Arlandis Wesley, were tried together. At a twelve-day trial, the State called 22 witnesses, including D.D., C.S. and L.S., and defendants called seven witnesses. The court admitted into evidence text messages where Meeds and an accomplice discussed where the men should enter the home, just minutes before they did so. The court also admitted video surveillance recordings, taken from various locations outside the home and in the garage, capturing the invasion in detail. Among other things, the videos showed Meeds and his accomplices entering the home with at least one gun and then leaving the home from various exits. A video in the garage shows Meeds holding D.D. at gunpoint while D.D. attempted to open the safe, as well as an accomplice bringing D.D.'s son into the garage and holding him there while D.D. continued to attempt to open the safe with a gun to his head. Videos from the front of the home showed police officers arriving, D.D. walking out to meet them, C.S. running from the home while zip tied, and Wesley fleeing from the home in a car, police in pursuit. The videos were played for the jury over the course of multiple days and witnesses. Meeds challenges neither the foundation nor the accuracy of the texts and videos on appeal.

¶6        Defendants, as is their right, did not testify. After considering the evidence and closing arguments, the jury found Meeds guilty of conspiracy; burglary in the first degree; aggravated assault of D.D.; kidnapping as to all adult victims; kidnapping as to one child; armed robbery of D.D. and L.S.; and attempted armed robbery of C.S., the lesser included offense of the armed robbery charge. In a bifurcated proceeding not challenged on appeal, the jury also found Meeds guilty of misconduct involving weapons and, in an aggravation phase, several aggravating factors. After the court found Meeds had several historical prior felony convictions, it sentenced Meeds to concurrent sentences of 22-, 20- and 12-years' imprisonment on all but one of the convictions, and a consecutive sentence of 20-years' imprisonment on the final conviction. This court has jurisdiction over Meeds' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4022(A)(2019).[1]

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

I.  **Meeds Did Not Preserve His Objection To The Prosecutor's Statements, Meaning This Court Reviews For Fundamental Error Resulting In Prejudice.**

¶7          On appeal, Meeds argues the State, in closing arguments, improperly referred to his decision to invoke his right not to testify by repeatedly stating evidence was undisputed. Meeds objected to the references once, in the following exchange:

> STATE:  So when we talk about the conspiracy to commit these crimes, the evidence is undisputed. Undisputed because not one person got up on that stand to say, hey, you know what, the victims got it wrong. The surveillance footage is wrong.
>
> MEEDS' COUNSEL: Judge, I'm going to object to that.
>
> THE COURT: The objection is overruled.

The issue is whether this objection properly preserved the argument Meeds presses on appeal.

¶8          To preserve an evidentiary issue for appeal, a party must timely object, stating "the specific ground, unless it was apparent from the context." Ariz. R. Evid. 103(a)(1). General objections do not suffice, *State v. Lopez*, 217 Ariz. 433, 434 ¶ 4 (App. 2008), and result in review for fundamental error, *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018); *State v. Rutledge*, 205 Ariz. 7, 13 ¶ 30 (2003).

¶9          Although claiming the prosecutor, during closing arguments, referred to evidence being "uncontested" twenty times, Meeds objected only once. Thus, as to the other references, the review is for fundamental error. *Escalante*, 245 Ariz. at 140 ¶ 12. Moreover, he did not provide any basis for his one objection, he did not attempt to offer any specific basis and the basis for the objection is not apparent from the context. *See State v. Foshay*, 239 Ariz. 271, 276 ¶¶ 17-18 (App. 2016) (finding appellant had forfeited an argument that evidence was inadmissible under Rule 702 and as hearsay when his stated grounds for objection at trial were relevance and cumulative evidence).  Because Meeds failed to object with the required

specificity, he failed to preserve the issue, meaning the review on appeal is for fundamental error.

## II.     Meeds Has Not Shown The Prosecutor's Comments Were Fundamental Error.

¶10      Meeds argues the State, by repeatedly stating evidence was undisputed, improperly commented on Meeds' "exercise of his 5th Amendment right" not to testify, which requires reversal of his convictions. Given that fundamental error applies, Meeds "bears the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *State v. Bearup*, 221 Ariz. 163, 168 ¶ 21 (2009) (citations omitted); *see also Escalante*, 245 Ariz. at 142 ¶ 21.

¶11      It is well-settled law that the State is prohibited from commenting on a defendant's failure to testify at trial, either directly or indirectly. *See* U.S. Const. amend. V; Ariz. Const. art. 2, § 10; A.R.S. § 13-117(B); *see also Griffin v. California*, 380 U.S. 609, 613-14 (1965); *Rutledge*, 205 Ariz. at 12 ¶ 26. Given Meeds' arguments on appeal, the question is whether the State's characterization of the evidence as "undisputed" in closing arguments violated this prohibition. "Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify." *Rutledge*, 205 Ariz. at 13 ¶ 33.

¶12      Meeds' main focus is on two statements during closing argument. First, in the introductory portion of her closing argument, the prosecutor used the word "undisputed" eight times and acknowledged the "common theme" she would be putting forth was that "the evidence is undisputed." She explained: "[W]henever I say that the evidence is undisputed, that means that you can only consider what came out of that chair and the evidence that has been entered into court." Second, when discussing the conspiracy charge, the prosecutor made the statements quoted above that resulted in Meeds' objection. Meeds argues these statements require that his convictions be reversed, because he and his co-defendant were the only people capable of explaining or contradicting the State's evidence.

¶13 "A comment that certain facts brought out by the prosecution are uncontradicted is not objectionable," except where "it appears that the defendant is the only one who could explain or contradict the evidence offered by the state." *State v. Still*, 119 Ariz. 549, 551 (1978). In *Still*, a state witness testified about a story the defendant had told the witness. *Id.* During closing arguments, the prosecutor stated he had "never heard an explanation . . . For why [the defendant] told [the witness] the story," and gestured toward the defense table when doing so. *Id. Still* concluded that, because "the only two people [privy] to these conversations were [the witness] and appellant, . . . appellant was the only person who could possibly contradict or explain the State's evidence." *Id. Still* held the comment, along with the prosecutor's gesture toward the defendant, had "emphasized the appellant's failure to take the witness stand" and was "an unconstitutional comment on the accused's right to remain silent." *Id.*

¶14 Unlike in *Still*, this case did not turn on an event of which no record existed and involving only two individuals. Instead, the home invasion involved three adult victims and four accomplices and was memorialized on video and discussed via text message. The jury properly could rely on the surveillance system recording of Meeds to explain what occurred inside the garage and, indirectly, inside the home. Additionally, all three adult victims testified and could have contradicted the surveillance footage, the physical evidence, each other's testimony, or all the above, but did not do so.

¶15 The prosecutor repeatedly linked the "undisputed" nature of the evidence to the surveillance footage. During the introduction to her argument, and directly after the first statement Meeds challenges on appeal, the prosecutor stated

> I wish at this point I could just sit down and let you deliberate because that is how undisputed the evidence is in this case. Because you have the surveillance videos. Frame after frame after frame after frame and it just keeps going and going as to how these defendants and their accomplices committed the crimes against [D.D.] and his family.

Similarly, before the second statement Meeds challenges on appeal, the prosecutor discussed in detail the evidence supporting the conspiracy charge. In doing so, she focused primarily on the surveillance footage and text messages, along with the victims' testimony.

¶16    That these references were to the recording of the home invasion was confirmed by the prosecutor toward the close of closing argument.

> Now, with regards to the evidence in this case, ladies and gentlemen, both of the defendants' participation in these crimes, all you have to take a look at is the evidence. You don't have to believe anything that anybody said in this court when you take a look at the surveillance video because the surveillance video, the text messages, the electronic information speaks for itself.

Context, as well as the trial evidence, including the recording of the home invasion, show the statements were not "calculated to direct the jurors' attention to the defendant's exercise of his fifth amendment privilege." *State v. Hughes*, 193 Ariz. 72, 87 ¶ 64 (1998) (citation omitted). Instead, the statements were meant to impress upon the jury the fact that Meeds' actions were memorialized electronically.

¶17    Meeds emphasizes the number of times the term "undisputed" was used by the State in closing. It is true the prosecutor used the word "undisputed" twenty times. But in context, the reference almost exclusively was to the surveillance footage or text messages. Stated differently, the prosecutor repeatedly emphasized the surveillance footage and text messages when urging the evidence was "undisputed."

¶18    Along with this context, the superior court properly instructed the jury that Meeds had the right not to testify; that they must not let Meeds' decision not to testify affect their deliberations; that every defendant is presumed innocent; and that attorneys' statements are not evidence. This court presumes jurors follow the instructions given. *Elliott v. Landon*, 89 Ariz. 355, 357 (1961). In this context, Meeds has not shown "the jury would naturally and necessarily perceive [the prosecutor's statements] to be a comment on the defendant's failure to testify." *Rutledge*, 205 Ariz. at 13 ¶ 33. Accordingly, Meeds has failed to show fundamental error.

**CONCLUSION**

¶19 Meeds has failed to show the prosecutor's statements were fundamental error. Accordingly, his convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA