NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

MARIO RAUL MARTINEZ,
*Appellant.*

No. 1 CA-CR 20-0099
FILED 5-18-2021

Appeal from the Superior Court in Maricopa County
No.  CR2015-118455-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

**M O R S E**, Judge:

¶1      Mario Raul Martinez appeals his convictions and sentences for second-degree murder, possession of marijuana, and possession of drug paraphernalia. He challenges two of the superior court's evidentiary rulings at trial. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2      The victim and his girlfriend, L.C., were staying at a friend's apartment when Martinez arrived to enquire about money the victim owed him for some speakers. After an argument ensued, the victim unexpectedly pushed Martinez into the wall, and the two "ended up grabbing onto each other."

¶3      L.C. returned to the apartment after taking out the trash, and she heard Martinez and the victim arguing about money in the bathroom. L.C. opened the bathroom door and saw the two men fighting on the floor. The victim was on his back, and Martinez was kneeling over him. Martinez then stabbed the victim in the chest, stood up, and left.

¶4      L.C. called police. When officers arrived, they found the victim—alive but unresponsive—laying on the ground outside the apartment. Officers also discovered a knife in the bathtub and another knife on the ground outside the apartment. The victim ultimately died from the knife wound inflicted by Martinez.

¶5      After interviewing L.C. and D.W., a neighbor who also witnessed portions of the confrontation between Martinez and the victim, officers turned their attention to locating Martinez. They found him driving his vehicle in a hospital parking lot. Upon arresting Martinez, an officer found a baggie of marijuana in his pocket. Martinez's ear and knuckle appeared injured, and he had a puncture wound on his back.

¶6      The State charged Martinez with second-degree murder, a dangerous class 1 felony, possession of marijuana, and possession of drug

paraphernalia. At trial, Martinez presented a self-defense case, testifying he feared for his life when the victim "[tried] to put something into my back."

**¶7** The jury found Martinez guilty as charged. Based on additional factors also found by the jury, the superior court imposed an aggravated prison sentence of 23.75 years for the second-degree murder charge. For the remaining counts, the court imposed presumptive prison terms. This appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.      Evidence of the Victim's Reputation for Violence.

**¶8** Martinez argues the superior court erred by precluding evidence of the victim's reputation for methamphetamine-induced paranoia and violence. According to Martinez, the evidence was admissible to support his self-defense claim—specifically that the victim was the initial aggressor—and the court's preclusion of the evidence therefore violated his constitutional right to present a complete defense.

**¶9** L.C. testified that, on the day of the stabbing, she and the victim had used methamphetamine. During cross-examination, Martinez asked L.C.: "And it's a fact, isn't it, that [the victim] would get highly paranoid when he consumed methamphetamine, correct?" The State objected on relevancy and Rule 404 grounds. *See* Ariz. R. Evid. 404(b)(1) ("[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). During the ensuing bench conference, Martinez explained, "[the question] directly goes toward the victim's capacity for violence. [L.C.] observed him being violent on many occasions." The court sustained the objection, a ruling we review for an abuse of discretion. *State v. McGill*, 213 Ariz. 147, 156, ¶ 40 (2006).

**¶10** Martinez correctly asserts that evidence of a victim's reputation for violence may be admissible in a self-defense case. Ariz. R. Evid. 404(a)(2), 405(a); *State v. Zaid*, 249 Ariz. 154, 159, ¶ 18 (App. 2020). But Martinez did not ask L.C. about the victim's violent reputation. *Cf. State v. Griffin*, 99 Ariz. 43, 46 (1965) (describing "*reputation in the community* for the character traits of argumentativeness, belligerence and quarrelsomeness" as admissible in self-defense case (emphasis added)). Notably, Martinez proffered that L.C. "observed [the victim] being violent on many occasions,"

and never proffered any evidence of the victim's reputation for violence. Instead, as demonstrated by the question and the offer of proof he provided, Martinez sought "to lay the foundation that [L.C.] observed this behavior before" to prove the "fact" that the victim becomes paranoid and acts violently after he consumes methamphetamine. Such observations are not evidence of the victim's general reputation for violence. *Cf. id.* at 46-47 (citing authority that discusses the admissibility of the deceased's "general reputation").

¶11　　　Further, because Martinez did not claim that, at the time of the knife fight, he knew of prior instances where the victim behaved violently after ingesting methamphetamine—nor did he identify circumstances that would otherwise corroborate his assertion that the victim was the initial aggressor—the proposed evidence was improper character evidence to prove the victim's propensity to behave violently. *See State v. Fish*, 222 Ariz. 109, 121, ¶ 35 (App. 2009) ("[A] defendant may not introduce evidence of specific acts unknown to the defendant at the time of the alleged crime to show that the victim was the initial aggressor."); *see also Zaid*, 249 Ariz. at 158-59, ¶¶ 14-16 (discussing *Fish* and the circumstances in a self-defense case necessary to render admissible a victim's prior acts that are unknown to the defendant at the time of the offense). The evidence was therefore inadmissible under Rule 404(b). And in light of the evidence admitted at trial, namely expert testimony regarding the violent behavior exhibited by methamphetamine users and the victim's use of the drug on the day of the incident, Martinez was not denied "the opportunity of presenting to the trier of fact information [that] bears . . . on the issues of the case . . . ." *State v. Foshay*, 239 Ariz. 271, 279-80, ¶ 41 (App. 2016) (quoting *State v. Fleming*, 117 Ariz. 122, 125 (1977)). No error occurred, and the superior court therefore did not abuse its discretion.

¶12　　　Alternatively, if the superior court did err, the error was harmless because the overwhelming evidence at trial contradicted Martinez's self-defense claim. *See State v. Bible*, 175 Ariz. 549, 588 (1993) ("When an issue is raised but erroneously ruled on by the trial court, this court reviews for harmless error."). As instructed, the jury could consider Martinez's "running away" as evidence of his guilt. And in this case, the evidence demonstrated Martinez fled twice. First, as noted, he left the scene before police arrived. Then, Martinez attempted to flee when police drove into the hospital parking lot to apprehend him.

¶13　　　Other evidence also contradicted Martinez's defense. Significantly, Martinez did not claim he was defending himself during his post-arrest police interview. Indeed, Martinez initially denied being in a

knife fight altogether, and when he eventually admitted to fighting the victim, he said he did not think the victim was going to kill him.

¶14       Finally, although Martinez was prohibited from asking L.C. whether she previously observed the victim behave violently while on methamphetamine, the court permitted Martinez to enquire whether the victim was paranoid or behaving violently after he used methamphetamine the day he was murdered.  When Martinez posed those questions to L.C., she responded, "No."

¶15       Considered collectively, the foregoing evidence establishes beyond a reasonable doubt that, had Martinez been permitted to ask L.C. about the victim's previous methamphetamine-induced violence, the verdicts would have remained unchanged.  *See Bible*, 175 Ariz. at 588 (stating error is harmless if "we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict").

## II.     Evidence of L.C.'s and D.W.'s Methamphetamine Use.

¶16       Martinez next argues the superior court erred by precluding evidence of L.C.'s and D.W.'s prolonged methamphetamine use during the week before the victim's murder.  Martinez contends the precluded evidence "would have undercut the reliability of these witnesses' observations . . . ."  Again, we review for an abuse of discretion.  *McGill*, 213 Ariz. at 156, ¶ 40.

¶17       During his cross-examination of L.C. and D.W., Martinez asked whether they used methamphetamine just before they observed the fight between Martinez and the victim.  Both responded that they did and, when Martinez proceeded to question L.C. whether she was "doing meth all week prior to [the day of the incident]," the superior court sustained the State's objection on relevance grounds.  The court did, however, allow Martinez to ask about L.C.'s drug use the day before the incident, which he subsequently did, and L.C. admitted to using methamphetamine then as well.

¶18       Martinez's argument is not persuasive.  On cross-examination, L.C. admitted that she did not remember parts of that day and her lack of memory was "probably" caused by her consumption of methamphetamine.  Considering the testimony regarding the witnesses' drug use the day of—and for L.C., the day before—the incident, further evidence of their drug use during the previous week was cumulative and only marginally relevant to challenge their ability to perceive the altercation between Martinez and the victim.  We discern no abuse of discretion.

## CONCLUSION

¶19 Martinez's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA