IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

NOV 30 2011

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,                )
                                     )        2 CA-CR 2010-0382
                    Appellant,       )        DEPARTMENT A
                                     )
         v.                          )        O P I N I O N
                                     )
MICHAEL JONATHON CARLSON,            )
                                     )
                    Appellee.        )
                                     )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20092426001

Honorable Christopher C. Browning, Judge

AFFIRMED


Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                      Tucson
                                          Attorneys for Appellant


Harley Kurlander                                         Tucson
                                           Attorney for Appellee


E C K E R S T R O M, Presiding Judge.

**¶1** Following a suppression hearing, the trial court granted the defendant Michael Carlson's motion to suppress statements he had made to law enforcement officers, finding they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The state appealed the suppression order pursuant to A.R.S. § 13-4032(6). We affirm.

**¶2** When reviewing a suppression order entered after a hearing, we consider only the evidence presented at the hearing, which we view in the light most favorable to upholding the trial court's order. *State v. Hummons*, 227 Ariz. 78, ¶ 2, 253 P.3d 275, 276 (2011); *State v. Szpyrka*, 220 Ariz. 59, ¶ 2, 202 P.3d 524, 526 (App. 2008); *State v. Sinclair*, 158 Ariz. 493, 494, 768 P.2d 655, 656 (App. 1988). Here, the facts relevant to the state's appeal are undisputed.

**¶3** On June 16, 2009, Carlson had been arrested and was being held in custody in a police station when he was interrogated by a detective from the Pima County Sheriff's Department. Before questioning began, the detective attempted to recite the *Miranda* advisory, and the following exchange occurred:

> [Detective]: . . . I wanna talk to you about this, um, case. . . . And because of the conditions that we're under here I'm gonna read you your rights.
>
> [Carlson]: I waive my rights. I know my rights. I have the right to remain silent. Anything that I say can and will be used. And I do have the right to remain silent. Anything that I say can and will be used against me in a court of law. An attorney will be appointed to represent me if I cannot afford one. I waive my rights.
>
> [Detective]: All right, sir. I think you understand.

2

A lengthy interrogation followed in which Carlson was never given the *Miranda* advisory. In the course of the interrogation, Carlson made numerous incriminating statements.

¶4 Relying primarily on *State v. Moorman*, 154 Ariz. 578, 744 P.2d 679 (1987), and *United States v. Bland*, 908 F.2d 471 (9th Cir. 1990), the trial court found that the detective "failed to fulfill her obligation to affirmatively advise the Defendant of his *Miranda* warnings before she began questioning him" and that she did not alert Carlson to the critical information that he had the right to an attorney to be present during questioning. As it argued below, the state contends Carlson's own "recitation of his *Miranda* rights [was] adequate" and "the absence of a specific warning about the presence of counsel during questioning [was] not fatal."

¶5 Given the wholesale absence of a *Miranda* advisory by law enforcement officers here, the precise issue to be decided on appeal is not, as the state maintains, whether the "warnings" reasonably conveyed the suspect's rights. *See Duckworth v. Eagan*, 492 U.S. 195, 203 (1989). The officer conveyed no warnings. Rather, we must address whether the suspect's own recitation demonstrated he knew the rights protected by *Miranda* such that he voluntarily and intelligently could waive those rights even without an advisory having been given by law enforcement officials. *See Maryland v. Shatzer*, ___U.S. ___, ___, 130 S. Ct. 1213, 1219 (2010) (waiver of rights protected by *Miranda* must be knowing, voluntary, and intelligent). In short, this case is not about the adequacy of *Miranda* warnings; instead, we focus on whether Carlson's statements displayed knowledge that obviated the need for the warnings being given at all.

3

¶6 In *Florida v. Powell*, the Supreme Court recently reaffirmed that *Miranda* created "'procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" ___U.S. ___, ___, 130 S. Ct. 1195, 1203 (2010), *quoting Duckworth*, 492 U.S. at 201. It is "'an absolute prerequisite to interrogation,'" the Court stated, "that an individual held for questioning . . . 'be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.'" *Powell*, ___U.S. at ___, 130 S. Ct. at 1203, *quoting Miranda*, 384 U.S. at 471. Given the simplicity and importance of the advisory, *Miranda* declared that "we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given." 384 U.S. at 468. Further, the *Miranda* Court provided that "[n]o effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given." *Id.* at 470.

¶7 In light of the foregoing, there should be little question but that law enforcement officers must affirmatively discharge their duties under *Miranda* whenever conducting a custodial interrogation. *Miranda* was meant to provide a clear rule, *see id.* at 441-42, and the Supreme Court has determined that the advisory it prescribed is "too simple" and "too important" to invite "ex post facto inquiries" into whether it was required in the circumstances of a particular case. *Id.* at 473 n.43. Notwithstanding this unambiguous directive from our highest court, we assume without deciding that a suspect theoretically could demonstrate full knowledge of the rights protected by *Miranda* and execute a valid waiver thereof even in the absence of an advisory by state officials. *See*

4

*United States v. Patane*, 542 U.S. 630, 641 (2004) (plurality opinion) ("[A] mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule."). Even allowing such an assumption, suppression of Carlson's statements was required here.

¶8 The essential information that must be conveyed to a suspect in a *Miranda* advisory is

> [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Powell*, ___U.S. at ___, 130 S. Ct. at 1203, *quoting Miranda*, 384 U.S. at 479 (alterations in *Powell*). Here, Carlson unnecessarily repeated the first two components of the *Miranda* advisory, which suggested his knowledge of the law and his confidence in such knowledge were not commensurate. As to the third and fourth components, he stated only that "[a]n attorney will be appointed to represent me if I cannot afford one." This lone statement both failed to demonstrate an awareness that he had a right to the presence of an attorney (as distinguished from mere eventual representation by an attorney), and that the right applied before, and continued during, any questioning. *See Moorman*, 154 Ariz. at 585, 744 P.2d at 686 ("[T]he warning must inform the defendant that the right to counsel exists before and during interrogation."). Rather than confirming his knowledge of the *Miranda* warnings, therefore, Carlson's statements arguably demonstrated his incomplete understanding of his rights and highlighted the need for the advisory.

¶9 We recognize, of course, that there is "no talismanic incantation" required by *Miranda*, *California v. Prysock*, 453 U.S. 355, 359 (1981) (per curiam), and courts will not construe the words used in a *Miranda* advisory as we might the language in a will or an easement. *Duckworth*, 492 U.S. at 203. If the sum total of statements in a *Miranda* advisory reasonably conveys the essential information, the warning will be deemed constitutionally adequate. *Powell*, ___U.S. at ___, 130 S. Ct. at 1204. But even under this standard, a *Miranda* advisory may not be reduced to a right to silence and appointed counsel coupled with a warning that anything said will be admissible in court. When any element of *Miranda* is omitted, we do not presume it is common knowledge. *See United States v. Tillman*, 963 F.2d 137, 141 (6th Cir. 1992). While different words or phrasings may be used to communicate the necessary information, "[t]he four warnings *Miranda* requires are invariable." *Powell*, ___U.S. at ___, 130 S. Ct. at 1204; *accord Moorman*, 154 Ariz. at 585, 744 P.2d at 686.

¶10 Although Carlson's attempted recitation of *Miranda* certainly demonstrated some familiarity with the warnings, it omitted essential information, most importantly the right to the presence of an attorney both before and during questioning. The Supreme Court authority cited by the state is thus readily distinguishable. In each of those cases, the suspects were informed of their right to the presence of an attorney during questioning. *See Powell*, ___U.S. at ___, 130 S. Ct. at 1200 (suspect advised of right to talk to appointed attorney "before any questioning" and informed he could exercise "any of these rights at any time" during interview); *Duckworth*, 492 U.S. at 198 (suspect informed: "You have a right to talk to a lawyer for advice before we ask you any

6

questions, and to have him with you during questioning."); *Prysock*, 453 U.S. at 356 (suspect advised, "You have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning."). In contrast, Carlson's statement that "[a]n attorney will be appointed to represent me if I cannot afford one" was accompanied by nothing clarifying the substance of his right to counsel as it related to the imminent interrogation. Accordingly, a knowing waiver of *Miranda* rights was not demonstrated here. *See Shatzer*, ___U.S. at ___, 130 S. Ct. at 1219.

¶11        Relying on *United States v. Frankson*, 83 F.3d 79, 82 (4th Cir. 1996); *United States v. Caldwell*, 954 F.2d 496, 498, 502 (8th Cir. 1992); *United States v. Adams*, 484 F.2d 357, 361-62 (7th Cir. 1973); and *United States v. Lamia*, 429 F.2d 373, 374-75, 376-77 (2d Cir. 1970), the state maintains a general statement about the right to counsel is sufficient to satisfy *Miranda*, at least when no other statement is given suggesting a temporal limitation on the right.[1] *But see United States v. Noti*, 731 F.2d 610, 615 (9th Cir. 1984) (general statement insufficient to alert suspect of right to counsel before and during questioning); *United States v. Anthon*, 648 F.2d 669, 672-73 (10th Cir. 1981) (same); *Sanchez v. Beto*, 467 F.2d 513, 514-15 (5th Cir. 1972) (same). But even those cases each involved an affirmative, unqualified advisory, albeit a general one, about

---

[1]We note that Caldwell's appellate challenge to the *Miranda* warning was not preserved in the trial court, *Caldwell*, 954 F.2d at 500; hence, the holding of *Caldwell* is simply that the warnings he received did not "amount[] to plain error." 954 F.2d at 502. The *Caldwell* majority allowed that the detective in that case "could, and arguably should, have been more explicit in advising Caldwell of his right to an attorney." *Id.* at 503.

the right to the presence of an attorney and are distinguishable on that basis. *See Frankson*, 83 F.3d at 81 (suspect told, "You have the right to an attorney."); *Caldwell*, 954 F.2d at 498 (suspect informed, "You have a right for an attorney."); *Adams*, 484 F.2d at 361 (suspect advised of "right to counsel"); *Lamia*, 429 F.2d at 374 (suspect informed "he had a right to an attorney").

¶12      Here, by contrast, Carlson's acknowledgement of his right to counsel was more limited. It demonstrated only an understanding of his right to the appointment of counsel, as distinguished from a right to the presence of counsel.[2] And, because it was immediately preceded by his statements regarding the admission of evidence "in a court of law," Carlson's comment in context clarified only his belief that he would be entitled to appointment of counsel at some unspecified stage in the criminal proceedings.

¶13      In any event, we reject the state's suggestion that it need not specifically articulate the right to counsel before and during questioning in light of the Supreme Court's recent opinion in *Powell*. There, the suspect was advised that he had "the right to talk to a lawyer before answering any . . . questions" and that he could "use any of these rights at any time you want during the interview." ___U.S. at ___, 130 S. Ct. at 1200. On appeal, the Florida state courts held these warnings to be inadequate on the ground they did not inform the suspect of his right to the presence of an attorney throughout the interrogation. *Id.* at ___, 130 S. Ct. at 1200-01. The Supreme Court characterized the issue before it as "whether the warnings Powell received satisfied th[e] requirement" that

---

[2]Under our rules of criminal procedure, appointment of counsel occurs during the defendant's initial appearance. Ariz. R. Crim. P. 4.2(a)(3), (5).

a suspect be informed of "'the right to consult with a lawyer and to have the lawyer with him during interrogation.'" *Id.* at ___, 130 S. Ct. at 1203, *quoting Miranda*, 384 U.S. at 471.

¶14 Answering this question in the affirmative, the Court held that "[i]n combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at ___, 130 S. Ct. at 1205. "We find the warning in this case adequate," *Powell* emphasized, "only because it communicated just what *Miranda* prescribed." *Id.* at ___ n.5, 130 S. Ct. at 1205 n.5. *Powell* went on to describe the standard advisory used by the Federal Bureau of Investigation as "exemplary" insofar as it conveys "the same essential message" of *Miranda* that suspects can "'talk to a lawyer . . . before . . . any question[ing]'" and "'have the right to have a lawyer with [them] during questioning.'" *Id.* at ___, 130 S. Ct. at 1206. Indeed, the two members of the *Powell* Court not joining the majority opinion on the merits of the issue, Justices Stevens and Breyer, expressed "doubt[] that warning a suspect of his 'right to counsel,' without more, reasonably conveys a suspect's full rights under *Miranda*." ___U.S. at ___ n.8, 130 S. Ct. at 1211 n.8 (Stevens, J., dissenting). We therefore regard any controversy about the existence of a temporal requirement in *Miranda* as being settled by *Powell*. Both the majority and dissenting opinions emphasized the requirement that suspects be alerted that the right to counsel attaches before and during questioning. In *Moorman*, our own supreme court came to the same conclusion: a suspect must be advised "that the right to counsel exists before and during interrogation." 154 Ariz. at 585, 744 P.2d at 686.

9

¶15    The state next argues that Carlson's dealings with law enforcement years ago, his past experience with the *Miranda* warnings, and his training as a paralegal should be considered when determining whether he knew his rights. The state does not cite any legal authority for this proposition or otherwise develop its argument on this point. A policy argument certainly may be made that such considerations should determine the adequacy of or need for a *Miranda* warning. *See* Thomas P. Windom, *The Writing On The Wall: Miranda's "Prior Criminal Experience" Exception*, 92 Va. L. Rev. 327, 328 (2006) (arguing actual knowledge of rights should "dispositively foreclose[] any *Miranda*-based suppression motions"). But this court is not at liberty to adopt a rule so at odds with the purpose and clear requirements of *Miranda*.

¶16    *Miranda* explains that its advisory was not created solely for "the subnormal or woefully ignorant" but was designed, in part, to overcome the inherent pressures of an interrogation and to "show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it." 384 U.S. at 468, 469. The need for the warning does not depend on a suspect's personal history or occupation. *See United States v. Longbehn*, 850 F.2d 450, 451, 453 (8th Cir. 1988) (requiring suppression of statements by police officer suspected of crime when officer not given *Miranda* warnings). And in the absence of an adequate warning—or an equivalent recitation by a suspect—we will not inquire whether the suspect nevertheless was aware of his or her rights. *See United States v. Bland*, 908 F.2d 471, 472, 474 (9th Cir. 1990) (requiring suppression of statements based on inadequate warning even though parolee interrupted advisory to say he had heard *Miranda* warnings "a million times before");

10

*State v. Verdugo*, 164 P.3d 966, 970, 972 (N.M. Ct. App. 2007) (requiring suppression when detective gave incomplete warnings to suspect who interrupted advisory to say he understood his rights).[3]

¶17        As noted above, Carlson's own recitation was deficient because it did not acknowledge the right to the presence of counsel before and during interrogation.  And although Carlson generally claimed to know his rights, we adhere to "the better view . . . that such an ambiguous assertion does not foreclose the need for specification of those rights by the police."  2 Wayne R. LaFave et al., *Criminal Procedure* § 6.8(a), at 572 (2d ed. 1999).

¶18        Finally, we note the state has not challenged Carlson's motion on an estoppel theory.  Several courts have made statements suggesting that a defendant's interference with a *Miranda* advisory will preclude later challenges to it.  *See People v. Nitschmann*, 41 Cal. Rptr. 2d 325, 328 (Ct. App. 1995) ("A suspect may not 'out Mirandize' the police by reciting his *Miranda* rights before the officer has admonished him and later claim the admonition was defective."); *State v. Perez*, 157 N.W.2d 162, 164 (Neb. 1968) ("A police officer is not required to give a ritualistic warning of a right the defendant already knew of and which he refused to hear the repetition of."); *State v. Walden*, 336 N.W.2d 629, 632 (N.D. 1983) ("Where . . . the State has made a reasonable

---

[3]We emphasize that our decision here "does not foreclose consideration of the particular suspect's knowledge based, for example, upon his prior contacts with the police, when the issue is whether the warnings given were understood by him."  2 Wayne R. LaFave et al., *Criminal Procedure* § 6.8(a), at 571-72 (2d ed. 1999); *see, e.g.*, *State v. Tapia*, 159 Ariz. 284, 287, 767 P.2d 5, 8 (1988).

effort to inform the defendant of his rights in accordance with the dictates of *Miranda* and the defendant has refused to listen, the defendant has waived his right to be informed."). Because the state has not presented such an argument, we do not address whether Carlson meaningfully obstructed the detective's efforts to provide the advisory or whether, in that event, the detective was entitled to proceed with her questioning without a proper advisory.

¶19 Where, as here, a defendant's pretrial motion makes a prima facie case for the suppression of his statements to law enforcement, the state carries the burden to prove "the lawfulness in all respects of the acquisition" of the evidence. Ariz. R. Crim. P. 16.2(b). Accordingly, we will not disturb a trial court's suppression order based on a ground or theory not asserted below by the state. *State v. Brita*, 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988); *State v. Barnes*, 215 Ariz. 279, n.2 & n.6, 159 P.3d 589, 591 n.2, 593 n.6 (App. 2007); *State v. Main*, 159 Ariz. 96, 99, 764 P.2d 1155, 1158 (App. 1988); *see also State v. Hendrix*, 165 Ariz. 580, 582, 583, 799 P.2d 1354, 1356, 1357 (App. 1990) (reversing order denying defendant's motion to suppress and finding state's alternative argument for upholding order waived by failure to present below).

¶20 If the recitation of the *Miranda* advisory Carlson offered here were given by a law enforcement officer to a suspect, we would find it inadequate as a matter of law. *See United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002). We therefore uphold the trial court's implicit determination that the same recitation did not demonstrate Carlson's knowledge of the rights protected by *Miranda* so as to effectuate a

12

valid waiver. *See State v. Villalobos*, 225 Ariz. 74, ¶ 11, 235 P.3d 227, 231 (2010); *State v. Newell*, 212 Ariz. 389, ¶ 22 & n.6, 132 P.3d 833, 840 & n.6 (2006).

**¶21**          The trial court's suppression order is affirmed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge