IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

_____

THE STATE OF ARIZONA,
*Appellee,*

*v.*

GEORGE WILLIE RIOS,
*Appellant.*

No. 2 CA-CR 2022-0084
Filed April 10, 2023

_____

Appeal from the Superior Court in Pima County
No. CR20195491001
The Honorable James E. Marner, Judge

**AFFIRMED**

_____

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Amy Pignatella Cain, Assistant Attorney General, Tucson
*Counsel for Appellee*

Megan Page, Pima County Public Defender
By David J. Euchner, Assistant Public Defender, Tucson
*Counsel for Appellant*

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Staring and Judge O'Neil concurred.

S K L A R, Judge:

¶1        George Rios appeals his convictions and sentences for theft of property, burglary, and theft of a means of transportation.  He argues that the trial court abused its discretion in denying his motion to suppress based on *Miranda v. Arizona*, 384 U.S. 436 (1966).  He further argues that the *Miranda* advisory was inadequate because it stated only that he had the right to "the presence of an attorney to assist you prior to questioning."  It did not expressly state that his right to counsel continued "during" questioning.  We conclude that the advisory reasonably conveyed Rios's rights, such that the trial court did not abuse its discretion.  The "prior to" language conveyed to Rios when his right to the "presence" of counsel was triggered.  It did not convey any subsequent limitation on that right.  We also reject Rios's arguments that insufficient evidence supported his convictions and that the trial court erred in giving certain jury instructions.  We therefore affirm Rios's convictions and sentences.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        We view the facts in the light most favorable to sustaining the jury's verdicts, and we resolve all inferences against Rios.  *See State v. Felix*, 237 Ariz. 280, ¶ 30 (App. 2015).  In October 2019, Rios was doing construction work at a fitness center in Tucson.  M.V. also worked there as a custodian.  On the morning of the offense, M.V. drove her son's blue 2011 Chevrolet HHR to work and parked in the front of the building.  After she went inside, M.V. retrieved a janitorial cart and hung her lanyard, which included her car keys, on the cart.

¶3        When her shift ended, M.V. noticed that both her keys and car were missing.  Fitness center staff viewed the facility's surveillance footage, which showed a man walking across the parking lot and driving away in M.V.'s car.  The man was wearing a black jacket over a pullover sweatshirt, a white hard-hat, jeans, and work boots.  He was carrying a broom and shovel.  Rios's employer identified the man as Rios, based on his clothing, the broom, and the shovel.  M.V. identified the car as hers and stated that she had not given Rios permission to drive it.

¶4        The next day, police officers detained Rios for questioning. After giving a *Miranda* advisory, they asked Rios what had happened the day before. Rios responded that nothing had seemed out of the ordinary. He denied stealing any vehicles and provided his residential address.

¶5        During a visit to Rios's home, officers found M.V.'s vehicle on a neighbor's property, roughly 300 to 400 feet south. The license plate and VIN matched the vehicle M.V. had reported stolen. A witness had seen items being taken from the vehicle and carried into the neighbor's residence. Some items from the vehicle were subsequently found in that residence.

¶6        M.V. had left a purse containing her checkbook, identification, and $1,572 in cash under the vehicle's front seat. Those items were missing when the vehicle was recovered and were never found.

¶7        Rios was indicted on five counts: (1) theft of means of transportation; (2) burglary in the third degree; (3) theft of property or services for stealing the keys, purse, and cash; and (4) two drug counts that were severed before trial. A jury found him guilty of the remaining three charges, and the trial court sentenced him to concurrent terms of imprisonment totaling 7.5 years. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## *MIRANDA* ADVISORY

¶8        Rios argues that the trial court improperly denied his motion to suppress his post-arrest statements and the fruits of those statements because the arresting officer gave an inadequate *Miranda* advisory. "We review the court's denial of [the] motion to suppress for an abuse of discretion." *State v. Rushing*, 243 Ariz. 212, ¶ 56 (2017). But we review de novo whether Rios received an adequate *Miranda* advisory. *See State v. Aldana*, 252 Ariz. 69, ¶ 10 (App. 2021).

¶9        In reviewing a motion to suppress, we generally consider "only the evidence presented at the suppression hearing." *Rushing*, 243 Ariz. 212, ¶ 56. But in this case no evidentiary hearing was held, and the trial court decided the matter on the parties' motions, from which we draw the relevant and undisputed facts. The undisputed record shows that when Rios was arrested, an officer gave him the following *Miranda* advisory before questioning:

You have the right to remain silent. Anything
you say can and will be used against you in a
court of law. You have the right to the presence
of an attorney to assist you prior to questioning.
Um. If you can't afford one we'll provide one
for you. Ok. Do you understand those rights?

**¶10** Before a custodial interrogation, police must advise suspects of their rights under the Fifth and Fourteenth Amendments to the United States Constitution. *State v. Carlson*, 228 Ariz. 343, ¶ 6 (App. 2011). The advisory must convey the following essential information:

[1] that he has the right to remain silent,
[2] that anything he says can be used against
him in a court of law, [3] that he has the right to
the presence of an attorney, and [4] that if he
cannot afford an attorney one will be appointed
for him prior to any questioning if he so desires.

*Id.* ¶ 8 (quoting *Florida v. Powell*, 559 U.S. 50, 59-60 (2010)). Absent such an advisory, the defendant cannot be deemed to have knowingly waived those rights even if the defendant chooses to talk to police. *Id.* ¶¶ 5-6.

**¶11** Although every element of the advisory must be conveyed, courts do not dictate the precise language. *Id.* ¶ 9. As long as "the sum total of statements in a *Miranda* advisory reasonably conveys the essential information," the warning is sufficient. *Id.* Nevertheless, the advisory "must inform the defendant that the right to counsel exists before and during interrogation" and "must not convey the message that appointed counsel cannot be made available until some future time." *State v. Moorman*, 154 Ariz. 578, 585 (1987).

**¶12** Rios argues that the advisory was inadequate because the officer told him he had a right to counsel "prior to" questioning, but not "during" questioning. We find instructive the United States Supreme Court's decision in *Powell*, which concluded that a similar advisory was sufficient. 559 U.S. at 53, 62-63. There, the officer had advised the suspect that he had "the right to talk to a lawyer before answering any of [the officers'] questions" and that he could invoke this right "at any time . . . during th[e] interview." *Id*. at 53 (alterations in *Powell*). The Court reasoned that "in context, the term 'before' merely conveyed when [the defendant]'s right to an attorney became effective" and that "[n]othing in the words used indicated that counsel's presence would be restricted after the questioning

commenced." *Id.* at 63. It also rejected as "unlikely" a scenario in which a suspect who has just received a *Miranda* advisory would lose the right to counsel once the interview commenced. *Id.* at 62-63.

¶13 This case is distinguishable from *Powell* because here, the officer did not say that Rios could invoke his right to counsel at any time. He said only that Rios had the "right to the presence of an attorney to assist [him] prior to questioning." No Arizona cases have applied *Powell* to advisories such as this. Two noteworthy cases from outside Arizona, however, have done so. In the first case, *Rigterink v. State*, the defendant had received an oral and written advisory that stated in relevant part, "I have the right to have an attorney present prior to questioning." 66 So. 3d 866, 884 (Fla. 2011) (emphasis omitted). In the second case, *United States v. Clayton*, the advisory stated, "You have the right to talk to a lawyer before we ask you any questions." 937 F.3d 630, 634 (6th Cir. 2019).

¶14 The courts in both *Rigterink* and *Clayton* concluded that the advisories had reasonably conveyed the essential information about the defendants' rights. Like *Powell*, they concluded that the temporal language—"prior to questioning" in *Rigterink* and "before we ask you any questions" in *Clayton*—conveyed when the right to counsel was triggered. *Rigterink*, 66 So. 3d at 892 (emphasis omitted); *Clayton*, 937 F.3d at 639. They rejected the suggestion that the advisory could reasonably be understood as limiting the right to counsel during interrogation. *Id.* In doing so, the *Rigterink* court emphasized the advisory's reference to the right to have an attorney "present." 66 So. 3d at 892-93. Like the Court in *Powell*, the *Rigterink* court concluded that it would be "indefensible" and "illogical" for the defendant to believe he "could have counsel *present* before questioning began and that, once questioning began, counsel must leave." *Id.* at 893 (emphasis added). The court in *Clayton* also noted that the advisory at issue was similar to one that the United States Supreme Court had endorsed in *Miranda* itself. *See* 937 F.3d at 639-40 (citing *Miranda*, 384 U.S. at 479).

¶15 Rios describes *Clayton* as an "aberration." He does not address *Rigterink* at all. But he has cited no cases concluding that advisories like the one he received are insufficient to reasonably convey a defendant's rights. We also find *Rigterink* and *Clayton* persuasive. Following their logic, we conclude that the advisory provided to Rios was sufficient. As in those cases, the officer's statement that "[y]ou have the right to the presence of an attorney to assist you prior to questioning" reasonably conveys when the right to counsel was triggered. The advisory did not suggest that the right to counsel terminated once questioning began, nor could Rios have reasonably drawn such an inference. Doing so would involve the scenario

rejected by *Powell* and *Rigterink* as "unlikely," "indefensible," and "illogical," where counsel would be present only until the interrogation began.

**¶16**         Rios cites *Moorman*, 154 Ariz. at 585, to argue that the advisory was insufficient because it did not inform him that the right to counsel existed during the interrogation.  But as we have explained, the advisory reasonably conveyed that message.  The advisory also did not violate *Moorman*'s prohibition on "convey[ing] the message that appointed counsel cannot be made available until some future time."  *See id*.  Rather, it expressly stated that Rios had the right to counsel even before the interrogation.

**¶17**         Nor are we persuaded by Rios's citation to *Carlson*, 228 Ariz. 343, ¶¶ 13, 14.  Unlike this case, the defendant in *Carlson* attempted to recite the *Miranda* advisory himself when the officer began to do so.  *Id.* ¶ 3.  However, the defendant did so incorrectly.  *Id.* ¶ 10.  He said he knew an "attorney will be appointed to represent [him] if [he] cannot afford one," but he did not suggest he knew that the right to counsel existed before and during questioning.  *Id.* ¶¶ 10, 12.  Nor did the officer supply this information.  *Id.* ¶ 3.  Here, by contrast, the officer advised Rios that he had the right to the presence of counsel before questioning, rather than at some future "unspecific stage in the criminal proceedings."  *Id.* ¶ 12.

**¶18**         We acknowledge that *Carlson* refers repeatedly to the right to counsel before and during questioning.  228 Ariz. 343, ¶¶ 10, 13-14.  Those comments made sense in the context of *Carlson*, where the defendant's statement evidenced no understanding of when the right to counsel attaches or applies.  *Id.* ¶ 12.  Here, by contrast, the officer advised Rios of that information.  Moreover, the defendant in *Carlson* said nothing about counsel's presence.  *Id.* ¶ 3.  In this case, the officer told Rios that he had the right to the "presence" of an attorney.  As we have explained, that statement, coupled with the "prior to questioning" language, conveyed to Ruiz that the right to counsel was triggered before questioning.  It logically continued through questioning.  We therefore conclude that the trial court did not err in denying Rios's motion to suppress.  However, we emphasize while the *Miranda* advisory reasonably conveyed Rios's rights, the better practice is to explicitly state that defendants have the right to counsel's presence both before and during the interrogation.

**SUFFICIENCY OF THE EVIDENCE**

**¶19** Rios also argues that we must vacate his convictions because the state presented insufficient evidence to support them. After the close of evidence, Rios moved for a judgment of acquittal, which the trial court denied. He renewed his motion after the verdict, asserting additional failures in the state's evidence. He also filed a motion for a new trial, arguing that the verdict was contrary to the weight of the evidence. The court denied each motion.

**Standard of review**

**¶20** A defendant is entitled to a judgment of acquittal if "there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a). Substantial evidence is more than a "mere scintilla." *State v. Hughes*, 189 Ariz. 62, 73 (1997) (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)). It requires "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt," *State v. West*, 226 Ariz. 559, ¶ 16 (2011) (quoting *Mathers*, 165 Ariz. at 67). However, where "reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury," as the court may not "re-weigh the facts or disregard inferences that might reasonably be drawn from the evidence." *Id.* ¶ 18 (quoting *State v. Lee*, 189 Ariz. 590, 603 (1997)). Furthermore, when considering whether substantial evidence exists, we resolve conflicts in the evidence against the defendant and view the facts in the light most favorable to sustaining the verdict. *State v. Pena*, 235 Ariz. 277, ¶ 5 (2014).

**¶21** Substantial evidence must support each element of the crime charged. *West*, 226 Ariz. 559, ¶ 16. Additionally, while a defendant's mental state is often challenging to prove, absent an outright admission, it may be properly "ascertained by inference from all relevant surrounding circumstances." *In re William G.*, 192 Ariz. 208, 213 (App. 1997); *see also State v. Bearup*, 221 Ariz. 163, ¶ 16 (2009) ("Criminal intent, being a state of mind, is shown by circumstantial evidence.").

**¶22** Rios does not clearly argue that the trial court improperly denied his motion for a new trial, so we do not consider that ruling apart from his claims related to the sufficiency of the evidence. *See State v. Bolton*, 182 Ariz. 290, 298 (1995) ("Failure to argue a claim on appeal constitutes waiver of that claim."); *cf. also State v. Clark*, 249 Ariz. 528, ¶ 18 (App. 2020) ("A conviction based on insufficient evidence is fundamental error whether a defendant expressly argues fundamental error or not."). We review Rios's

sufficiency-of-the-evidence argument claim de novo. *See State v. Fuentes*, 247 Ariz. 516, ¶ 36 (App. 2019).

**Theft of means of transportation**

¶23　　We first address Rios's conviction for theft of a means of transportation. Under the two theories the state argued at trial, a person is guilty of theft of means of transportation if the person knowingly and without lawful authority controls another person's vehicle either with the intent to permanently deprive them of it or while knowing or having reason to know that the vehicle was stolen. *See* A.R.S. §§ 13-1814(A)(1), (5), 13-1801(A)(9).

¶24　　Substantial evidence supported Rios's conviction. M.V. and her son filled out a stolen-vehicle affidavit. The surveillance footage showed a man identified as Rios driving away in M.V.'s car. Additionally, given that the vehicle had been found very near Rios's home, the jury could reasonably conclude that he was the person in the video. From those circumstances, as well as M.V.'s missing keys and Rios's opportunity to steal them, the jury could also infer that Rios had knowingly taken the vehicle. Also, as more than two weeks had passed before the vehicle was found, the jury could conclude that Rios intended to permanently deprive M.V. of the vehicle, or at a minimum, that he knew the vehicle was stolen.

¶25　　Rios argues that several weaknesses in the evidence rendered it insufficient. Specifically, he argues that: (1) the surveillance video was low quality and his employer might have mistakenly identified him; (2) Rios and his manager provided conflicting testimony about when Rios had left work; (3) no physical evidence connected him to the stolen vehicle or its contents; (4) no evidence showed that he had an opportunity to steal M.V.'s keys; and (5) the police investigation was insufficiently thorough.

¶26　　We agree with Rios that a reasonable jury could have weighed the evidence differently. But we may not reverse a conviction for insufficiency of the evidence simply because another jury might have reached a different verdict. *See State v. Williams*, 209 Ariz. 228, ¶6 (2004). Nor is the lack of physical evidence connecting Rios to the crime dispositive. *State v. Hall*, 204 Ariz. 442, ¶ 49 (2003) ("[P]hysical evidence is not required to sustain a conviction if the totality of the circumstances demonstrates guilt beyond a reasonable doubt.").

**Burglary**

¶27 A person commits burglary in the third degree by entering or remaining unlawfully in a vehicle with the intent to commit any theft or felony therein. A.R.S. § 13-1506(A)(1); *see also* § 13-1501(12) (defining "structure" to include vehicles). Sufficient evidence also supported Rios's burglary conviction. The surveillance footage, the identification, and the location of the stolen vehicle allowed the jury to conclude that Rios had unlawfully entered M.V.'s vehicle. The evidence likewise supported the conclusion that Rios had an intent to commit a felony within the vehicle, namely, theft of a means of transportation.

**Theft**

¶28 A person commits theft if, without lawful authority, the person knowingly controls the property of another with the intent to deprive that person of it or while knowing or having reason to know that the property was stolen. *See* A.R.S. § 13-1802(A)(1), (5).

¶29 Rios was charged with theft of property valued between $1,000 and $2,000 for stealing M.V.'s cash, purse, and keys. *See* A.R.S. § 13-1802(A), (G). Sufficient evidence also supported this conviction. M.V. testified that her purse had contained $1,572 to pay wages to the employees she was supervising. She also testified that she had left the purse hidden under the vehicle's front seat, which was moved forward. However, when the vehicle was recovered, the front seat had been moved back, which would have exposed the purse. The purse, including the cash and keys, were missing and never recovered.

¶30 From this evidence, the jury could reasonably conclude that Rios had exposed the purse when he moved the seat back, then intentionally removed the purse and its contents. Although no evidence corroborated the existence of the purse and the cash, corroboration would not necessarily be expected given the nature of the stolen items, nor was it required. *See State v. Munoz*, 114 Ariz. 466, 469 (App. 1976) ("conviction may be based on the uncorroborated testimony of the victim unless the story is physically impossible or so incredible that no reasonable person could believe it"). M.V. credibly explained the presence and amount of the cash—she was using it to pay employees. And as the evidence supported the other theft and burglary convictions, it also provided a sufficient basis for the jury to reasonably conclude that Rios had known the purse was stolen.

## JURY INSTRUCTION

¶31      Finally, Rios argues that the trial court improperly instructed the jury on theories of theft and theft of means of transportation. Those instructions allowed the jury to convict Rios based on a finding that he had knowingly controlled the stolen property. He argues that the instructions were improper because they invited the jury to speculate and find guilt when unsupported by the evidence.

¶32      We review the trial court's decision to give a jury instruction for abuse of discretion, and we will only reverse if "the instructions, when taken as a whole, would mislead the jurors." *See Leon v. Marner*, 244 Ariz. 465, ¶ 11 (App. 2018) (quoting *State v. Rutledge*, 197 Ariz. 389, ¶ 15 (App. 2000)). A party is entitled to a jury instruction on any theory that is reasonably supported by the evidence. *State v. Rodriguez*, 192 Ariz. 58, ¶ 16 (1998). We view the evidence in the light most favorable to the proponent of the instruction. *State v. Almeida*, 238 Ariz. 77, ¶ 9 (App. 2015). The court may not weigh or resolve conflicts in the evidence, but must decide only whether there is sufficient evidence to sustain the verdict. *Id.* The "slightest evidence" is sufficient to support a jury instruction. *Id.* (quoting *State v. King*, 225 Ariz. 87, ¶ 14 (2010)).

¶33      We conclude that the trial court did not abuse its discretion in providing the instruction. Sufficient evidence supported the theory that Rios had knowingly controlled the stolen vehicle and other property, given the surveillance video and the vehicle being found close to his home. We reject Rios's argument that this theory presumes that he must have been caught in possession of the property. The jury could reasonably infer from those circumstances that Rios had knowingly controlled the property.

¶34      Rios also notes that the state did not request an optional instruction under A.R.S. § 13-2305 that allows jurors to infer from certain types of evidence that a defendant controlled stolen property. But Rios has pointed to nothing to suggest that the jury is precluded from making the same inference based on other evidence. Nor does A.R.S. § 13-2305 contain such a suggestion.

## DISPOSITION

¶35      For the foregoing reasons, we affirm Rios's convictions and sentences.