NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JARRELL STEPHENS, *Appellant.*

No. 1 CA-CR 24-0098

FILED 02-04-2025

Appeal from the Superior Court in Maricopa County
No. CR2023-006715-001
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Kenney Law LLC, Florence
By Anthony L. Kenney
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge David D. Weinzweig joined.

---

**K I L E Y**, Judge:

**¶1**        Jarrell Stephens ("Stephens") appeals his conviction for kidnapping, arguing that the superior court erred by denying his motion for judgment of acquittal and that the evidence is insufficient to support his conviction. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        Central Arizona Shelter Services ("CASS") is a non-profit organization that offers resources to people experiencing homelessness. CASS provides recipients with temporary housing for up to a presumptive maximum of 90 days, with extensions available under certain circumstances. During their stay in temporary housing, recipients are required to participate in services and programs offered by CASS that are intended to assist them to obtain long-term housing and achieve financial stability by securing employment or applying for disability or other benefits. Those who do not participate in CASS services during their stay in temporary housing may, after a warning, be disqualified from continued eligibility for services and, therefore, required to move out.

**¶3**        In the summer of 2022, Stephens was a recipient of CASS services and "R.W." was his case manager. Viewed in the requisite light most favorable to sustaining the jury's verdict, *State v. Thompson*, 252 Ariz. 279, 287, ¶ 2 n. 3 (2022), the evidence shows that on August 18, 2022, Stephens came to the CASS office in Phoenix to meet with R.W. As R.W. later testified, the purpose of the meeting was to "see what [Stephens's] progress was as far as applying for his Social Security benefits or trying to gain employment, things like that." Before this meeting, Stephens had been given a warning about his failure to adequately participate in CASS's services, but he had not yet been disqualified from receiving services.

**¶4**        When Stephens entered the office's lobby, R.W. was alone behind the front desk. The front desk is in an enclosed room separated from the lobby by a counter with a plexiglass window and, next to it, a locked

door that can only be opened by displaying a security badge in front of a scanner. Stephens waited in the lobby for his turn to meet with R.W. to discuss his case. After she finished speaking with another client, R.W. called Stephens up to the front desk. As he stepped up to the desk, Stephens asked R.W. if she was alone. R.W. answered, "No," adding, "[M]y other co-workers are in the back."

¶5      Moments later, one of R.W.'s co-workers, D.W., walked in from the main entrance through the lobby and proceeded to the secured door next to the front desk. Once D.W. used her security badge to open the door, Stephens pushed her aside and proceeded through the door. He then turned left and walked through an unlocked door leading into the enclosed room where R.W. sat. Once "in the room with [R.W.]," Stephens closed the door behind him. As R.W. later testified, Stephens called her a "[s]tupid bitch" and yelled, "Are you really going to f-ing kick me out[?]" Seeing that Stephens was "very angry," R.W. was "scared." She "froze for a little bit," then "scream[ed] for help." R.W. moved toward the door "to open it to let [her]self out," but was unable to because Stephens "pushed [her] back" to prevent her from leaving.

¶6      Hearing R.W.'s "scream of terror," her co-workers tried to enter the room but could not because Stephens was "blocking the door with his body weight." Finally, one of her co-workers, G.W., was able to "force[] the door open" and R.W. "was able to get out." As R.W. fled from the room, Stephens "backed up to the opposite side" of the room, "raised his fists" and told G.W., "Back up, bro." By then, "members of the security team" showed up and Stephens dropped his fists and allowed them to lead him out of the room. As he was being escorted back to the lobby, Stephens pointed in the direction "where . . . [R.W.] had gone" and yelled, "I'm going to kill that fucking bitch," adding that "he knew where [R.W.] fucking lived." Stephens then walked through the lobby and out the main entrance door, leaving the building before police arrived.

¶7      The State charged Stephens with kidnapping in violation of A.R.S. § 13-1304(A)(4), threatening or intimidating in violation of A.R.S. § 13-1202(A)(1), and assault in violation of A.R.S. § 13-1203(A)(3). The State later dismissed the assault charge.

¶8      The matter proceeded to a trial at which the jury convicted Stephens of threatening or intimidating but deadlocked on the kidnapping charge. Shortly thereafter, the State re-tried Stephens for kidnapping.

¶9 At the second trial, after the State rested, Stephens moved for a judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20(a)(1), arguing that the State presented insufficient evidence that he intended to place R.W. in reasonable apprehension of imminent physical injury. *See* A.R.S. § 13–1304(A)(4). The court denied the motion. Stephens rested without calling any witnesses, and the jury convicted Stephens of kidnapping.

¶10 The court sentenced Stephens to a mitigated term of seven years for Count 1 (kidnapping), and a concurrent term of six months for Count 2 (threatening or intimidating), with 310 days of presentence incarceration credit.

¶11 Stephens timely appealed. This Court has jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1), 13–4031, and –4033(A).

## DISCUSSION

¶12 Stephens appeals his conviction for kidnapping, arguing that the trial court erred in denying his Rule 20 motion for judgment of acquittal and that the evidence is insufficient to support a conviction for kidnapping.

¶13 A motion for a directed verdict should be granted only "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "Substantial evidence" is "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt." *State v. Rios*, 255 Ariz. 124, 130, ¶ 20 (App. 2023) (citation omitted). "[W]here reasonable minds may differ on inferences drawn from the facts," the motion must be denied. *Id.* (cleaned up). We review the denial of a motion for a directed verdict de novo, viewing the evidence in the light most favorable to upholding the jury's verdict. *State v. Allen*, 253 Ariz. 306, 335, ¶ 69 (2022).

¶14 When resolving a challenge to the sufficiency of the evidence, an appellate court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Burgess*, 245 Ariz. 275, 278, ¶ 9 (App. 2018) (citation omitted). An appellate court "will reverse a conviction for insufficient evidence only if there is a complete absence of probative facts to support the jury's conclusion." *State v. Clark*, 249 Ariz. 528, 534, ¶ 21 (App. 2020) (cleaned up); *see also Rios*, 255 Ariz. at 131, ¶ 26 ("[W]e may not reverse a conviction for insufficiency of the evidence simply because another jury might have

reached a different verdict."). Whether sufficient evidence was presented to sustain the verdict is a question of law reviewed de novo. *State v. Borquez*, 232 Ariz. 484, 487, ¶ 9 (App. 2013).

**¶15** Because Stephens presented no evidence at trial, his challenge to the denial of his Rule 20 motion and to the sufficiency of the evidence present the same question, *i.e.*, whether the State presented evidence in its case-in-chief sufficient to allow a jury to find him guilty of the charged offense beyond a reasonable doubt. *Cf. State v. Eastlack*, 180 Ariz. 243, 258-59 (1994) (citation omitted) (holding that when considering a challenge to sufficiency of evidence to support a conviction, the court considers "all the evidence presented in the case," including any evidence presented by the defendant).

**¶16** Stephens was charged with kidnapping in violation of A.R.S. § 13–1304(A)(4), which is committed "by knowingly restraining another person with the intent to . . . [p]lace the victim . . . in reasonable apprehension of imminent physical injury[.]" Stephens does not dispute that the evidence was sufficient to establish that he "knowingly restrain[ed]" R.W. *See* A.R.S. § 13–1304(A)(4).

**¶17** Stephens argues, however, that the evidence was insufficient to establish "that he intended to place [R.W.] in reasonable apprehension of imminent physical injury." A.R.S. § 13–1304(A)(4). His "words and actions," Stephens maintains, did not indicate an intent to harm her. "The only time [he] physically touched" R.W., Stephens asserts, "was when he pushed her" as she attempted to leave the room. According to Stephens, evidence that he pushed her merely showed that "he wanted to keep her confined," not "that he wanted to physically hurt her." Stephens admits that he "threatened to kill" R.W., but asserts that he made the threat only after R.W. "had already gotten outside" of the room. By that point, he concludes, R.W. "was no longer restrained" and, therefore, "the kidnapping was no longer occurring."

**¶18** Because "a defendant's state of mind is seldom, if ever, susceptible of proof by direct evidence," a defendant's intent "may be proven by circumstantial evidence." *State v. Harm*, 236 Ariz. 402, 406, ¶ 13 (App. 2015) (cleaned up). Whether a defendant possessed the requisite criminal intent is a question of fact left to the jury's determination. *State v. Quatsling*, 24 Ariz. App. 105, 108 (1975).

**¶19** Ample circumstantial evidence was presented to permit a reasonable jury to find that Stephens possessed the requisite intent to place

R.W. in reasonable apprehension of imminent physical injury. The State presented evidence, for example, that when Stephens first approached the front desk, he asked R.W. if she was alone. A reasonable jury could conclude from that question that Stephens was attempting to assess her vulnerability. Instead of carrying on his conversation with R.W. through the plexiglass of the front desk, Stephens forced his way through a secured door to confront R.W. in person. A reasonable jury could conclude that his insistence on facing her without a physical barrier between them was an act of intimidation. Likewise, a reasonable jury could have believed R.W.'s testimony that she was "scared" when Stephens began yelling and cursing at her, and could further have concluded that causing such fear was Stephens's intent. *See State v. Boag*, 104 Ariz. 362, 370 (1969) ("[A] person of sound mind is presumed to have intended the natural and probable consequence of every act deliberately done."). Finally, Stephens's threat to "kill" R.W., and his declaration that he knew "where [R.W.] . . . lived," cannot reasonably be interpreted as anything other than an attempt to instill fear in R.W. Although, as Stephens correctly points out, the evidence showed that he did not verbalize the threat until after R.W. left the room, a jury could infer, from his menacing statement after she left, that making her fear for her safety was his intent all along. *See State v. Vann*, 11 Ariz. App. 180, 182 (1970) ("What the defendant does or fails to do and what he says may be evidence of what is going on in his mind."); *see also State v. Mleziva*, 1 CA-CR 18-0813, 2019 WL 5618086 at *2, 3, ¶¶ 11, 15 (Ariz. App. Oct. 31, 2019) (mem. decision) (rejecting defendant's challenge to sufficiency of evidence to support intent element of animal cruelty charge and citing evidence that, "after the fact, [defendant] made disparaging statements to police about the dogs"; "In the absence of an outright admission, a defendant's mental state may be inferred from all relevant surrounding circumstances, including the defendant's words and actions at or near the time of the offense.") (cleaned up).

**¶20**         We hold that sufficient evidence was present to allow a reasonable jury to find beyond a reasonable doubt that Stephens intended to place R.W. in reasonable apprehension of imminent physical injury. *See State v. Lester*, 11 Ariz. App. 408, 411 (1970) ("The question of whether the defendant had the requisite intent was one for the jury and only if the facts afforded no ground for such inference was it permissible for the trial court to determine that no such intent existed."). The evidence was sufficient to support Stephens's conviction, and the court did not err in denying his Rule 20 motion.

## CONCLUSION

**¶21** For the foregoing reasons, we affirm Stephens's kidnapping conviction.

