NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAMES GAYLE GIBBS, SR., *Appellant.*

No. 1 CA-CR 23-0555

FILED 04-29-2025

Appeal from the Superior Court in Maricopa County
No. CR2020-001297-001
The Honorable David W. Garbarino, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Zhivago Law, Phoenix
By Kerrie M. Droban Zhivago
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

_____

**C A T L E T T**, Judge:

**¶1**          James Gayle Gibbs, Sr. ("Gibbs") appeals his convictions and sentences for five counts of child molestation, four counts of sexual abuse, five counts of sexual conduct with a minor, and one count of indecent exposure.  Gibbs' counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after diligently searching the record, counsel found no arguable question of law that was not frivolous.  Counsel asks us to review the record for arguable issues.  *See Penson v. Ohio*, 488 U.S. 75 (1988); *State v. Clark*, 196 Ariz. 530, 537 ¶ 30 (App. 1999). Gibbs also submitted a supplemental brief arguing multiple issues.  After reviewing the record, we affirm Gibbs' convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

**¶2**          We recount the evidence in the light most favorable to upholding the jury's verdicts.  *See State v. Rios*, 255 Ariz. 124, 127 ¶ 2 (App. 2023).

**¶3**          Gibbs is the father of H.G. and J.G.  When H.G. was between eleven and thirteen years old, Gibbs told her to help him with his psoriasis by rubbing lotion on his genitals.  H.G. indicated that Gibbs repeatedly asked her to put lotion on him, but not on his genitals every time.  On one occasion, Gibbs instructed her to either increase the pace at which she was applying the lotion or stop because she was going "too slowly."

**¶4**          Gibbs also conducted "breast examinations" on H.G., telling her that he wanted to ensure she was "healthy" and that "all moms and dads do this for their little girls."  H.G. said the examinations occurred multiple times.  Gibbs also used a vibrator between H.G.'s legs, despite H.G. telling him to stop, until her body had a physiological reaction where she "felt embarrassed and ashamed[.]"  H.G. said this occurred "too many times for [her] to count."

¶5          On another occasion, Gibbs used a mirror "to explain . . . the female anatomy" to H.G. but "it was difficult with [her] hair in the way." So they took a shower together while he shaved her genital area and used his hands to "clean[] all the hair out[.]" Gibbs told H.G. he did this to help prevent an infection.

¶6          Gibbs also committed various sexual acts on J.G. when she was ten and eleven. Like H.G., Gibbs shaved J.G. while taking a bath and would "touch [her] below the belt and teach [her] about it." "Throughout the year" Gibbs would use lotion "below [her] belt" because he "didn't want her to get an infection down there." Gibbs used a mirror to show her parts of her genitalia and used his fingers "pointing at it and touching in it." He also performed "breast examinations" on her, during which he told her to look him in the eyes, but she refused.

¶7          H.G.'s mother eventually alerted the police, who had her conduct a recorded confrontation call with Gibbs. On the call, Gibbs admitted to having H.G. rub lotion on his groin "twice in the past two years" and teaching her to do a self-breast exam. Gibbs denied being a "child predator" and stated that "nothing sexual" occurred. Gibbs instead claimed he was merely teaching his daughter because he was a "single father" who needed to "teach her things about her body."

¶8          A grand jury indicted Gibbs on seventeen criminal counts. After presenting evidence at trial, the State admitted that counts 5 and 9 were duplicative and that it had not presented evidence supporting count 16. So the court dismissed counts 9 and 16.

¶9          The jury convicted Gibbs on all fifteen remaining counts. The court sentenced him to seventeen years each on five counts of molestation of a child, with 118 days presentence incarceration credit for the first count; five years on each of the four counts of sexual abuse; twenty years on each of the five counts of sexual conduct with a minor; and one year for indecent exposure. The court ordered Gibbs to serve most of the sentences consecutively, with only count 13 being concurrent with count 12 and count 4 being concurrent with count 3.

¶10          Gibbs timely appealed. We have jurisdiction. A.R.S. §§ 13-4031; 13-4033(A)(1).

3

**DISCUSSION**

¶11        Gibbs makes multiple arguments about a separate case that is not before us.  We decline to address those arguments.  We instead address only his arguments pertinent to the convictions on appeal in this matter.

I.        **Arraignment**

¶12        Gibbs argues the court should have dismissed the charges against him because it held his arraignment fifty-nine days after the indictment.

¶13        For a defendant not in custody, an arraignment must be held "no later than 30 days after the filing of an indictment[.]"  Ariz. R. Crim. P. 14.2(a)(2).  "If the court cannot hold the arraignment within the time specified . . . because the defendant has not yet been arrested or summoned . . . the court must hold the arraignment as soon as possible[.]"  Ariz. R. Crim. P. 14.2(b).  The preference is for the court to issue a summons if the defendant is not in custody "[u]nless there is good cause to issue a warrant[.]"  Ariz. R. Crim. P. 3.1(b).

¶14        Even if an arraignment is untimely, "it is necessary that actual prejudice be shown."  *State v. Vassar*, 111 Ariz. 487, 489 (1975).  "Prejudice exists if the failure to arraign a defendant deprives him or her of notice of the charges and thereby deprives the defendant of the opportunity to defend against those charges."  *State v. Leenhouts*, 218 Ariz. 346, 348 ¶ 9 (2008).

¶15        On January 29, 2020, a grand jury indicted Gibbs.  That same day, the court issued a warrant for Gibbs' arrest.  On February 20, 2020, the court quashed the warrant and ordered a summons.  Gibbs was served on February 26, 2020.  The summons included the list of charges against him.  The summons listed March 19, 2020, as Gibbs' appearance date.  On March 19, 2020, the court held the arraignment, during which Gibbs appeared and pled not guilty.

¶16        While the court initially issued a warrant for Gibbs' arrest, it later used a summons.  The court held the arraignment on the same day as Gibbs' appearance date.  On appeal, Gibbs focuses only on the number of days between the indictment and his arraignment.  Even if the arraignment was untimely, Gibbs has never argued, let alone established, that any delay resulted in prejudice.  To establish prejudice, Gibbs needed to show that he was somehow deprived of the opportunity to defend the charges against

him.  *Leenhouts*, 218 Ariz. at 348 ¶ 9.  Having not done so, the timing of his arraignment is not a viable ground for us to vacate his convictions.

## II.    Double Jeopardy

**¶17**        Gibbs argues that he was charged and prosecuted with two different grand jury indictments, one in 2018 and one in 2020, both of which included four charges that were "the same."  Gibbs claims this violated his double jeopardy rights.  But Gibbs admits the State dismissed the 2018 indictment in April 2020, and he has not established that those charges ever went to trial.  This dooms Gibbs' double jeopardy claim because "jeopardy does not attach until a jury is empaneled and sworn[.]"  *State v. Young*, 258 Ariz. 26, ___ ¶ 24 (App. 2024).

## III.    Denial of Motion for Specificity

**¶18**        Gibbs moved to require the State to "specify more accurately when the alleged charges actually occurred."  He argued the date range for counts 1–10, which the State alleged occurred "[o]n or between October 28, 2016 and July 15, 2018," and for counts 11–17, which the State alleged occurred "[o]n or between January 6, 2017 and January 15, 2018," were overly broad.  The court denied Gibbs' motion, reasoning that there is no statutory or constitutional right to have charges framed in a manner to facilitate an alibi defense.

**¶19**        Gibbs argues the court's denial of his motion for specificity hurt his defense because his evidence was "rendered unusable due to the excessively wide date ranges[.]"  Specifically, Gibbs argues the indictment's lack of specificity limited his defense because, during eleven days within the date ranges in the indictment, the children were with their mother and other family while he was in Boston.

**¶20**        But a defendant cannot force the state to allege the date of an offense with specificity by pressing an alibi defense.  *State v. Davis*, 206 Ariz. 377, 391 ¶ 70 (2003); *State v. Hamilton*, 177 Ariz. 403, 410 n.6 (App. 1993).  Plus, Gibbs has not shown that the date ranges in the indictment prejudiced him in any other way.  *See State v. Copeland*, 253 Ariz. 104, 112 ¶ 14 (App. 2022).  The superior court did not err.

## IV.    The Jury

**¶21**        Gibbs alleges the superior court announced "prior to being on the record" that the court did not have adequate restroom facilities for the jury on the same floor as the courtroom, and it therefore asked Gibbs, Gibbs'

attorney, and Gibbs' family to use a restroom on a different floor. Gibbs "believes" the court made that request only to the defense and not to the State. Gibbs "believes" the jury was thereby "directly or indirectly exposed to information and opinions of others" during breaks.

¶22        At one point during trial, the court notified the parties that the court's judicial assistant reported that the "jurors were feeling a bit uncomfortable" about restroom access. As a result, the court requested that "folks who are connected with this case in any way, shape, or form just please use the bathroom on another floor[.]" Also, the court clarified that it did not "think anything was said" to any juror and that the issue arose from "the mere physical presence" of non-jurors with jurors in the restrooms.

¶23        Aside from speculation, Gibbs presents no evidence that any event occurred regarding restroom access or during breaks that prejudiced the jury against him. Gibbs did not raise any issue about improper juror contact during trial, even after the court made its announcement about the restrooms. Rather, the jury expressed to court staff on its own that it was uncomfortable with non-jurors being physically present with them in the restrooms. Additionally, the court instructed the jury at the beginning of trial that "[i]t is your duty not to speak with or permit yourselves to be addressed by any person on any subject connected with the trial. If someone should try to talk to you about the case, stop him or her or walk away." Not only do we presume the jury followed that instruction, but the fact that the jury notified the court that some jurors and non-jurors were physically present in the same restroom shows the jury took the charge to heart. *See State v. Canion*, 199 Ariz. 227, 237 ¶ 43 (App. 2000).

## V.        Arguments Without Factual Basis

¶24        Gibbs includes several arguments about events that are not supported by, or contrary to, the record.

### A.        Plea Deal

¶25        Gibbs argues the State violated his due process rights by not offering him a plea or participating in a settlement conference. But that argument mischaracterizes the record, which reflects that the State offered Gibbs a plea that would have resulted in a sentence "between 10 and 17 years" with "lifetime probation[.]" The court then explained to Gibbs that he was facing multiple counts of crimes against children, and if he was convicted on one count, it would result in a sentence between 10 and 27 years. The court further explained that convictions on all counts would

result in a sentence between 128 and 321.5 years. After discussing the plea offer with counsel, Gibbs rejected it.

### B.     Denial of Continuance

**¶26**          Gibbs argues that, in September 2023, his new counsel, who had been on the case for 77 days and had his file for 33 days, requested a continuance, but the court denied that request. Gibbs claims the court abused its discretion by doing so.

**¶27**          The record does not support Gibbs' version of events. In June 2023, the court assigned Gibbs new counsel. In July 2023, the court granted that counsel's continuance request and moved the deadline for picking a trial date from August 2023 to October 2023. The court's minute entry setting the final trial management conference, filed in September 2023, does not reflect that Gibbs' counsel requested another continuance. The court set trial for October 11, 2023. On October 4, 2023, however, Gibbs' counsel moved to vacate a settlement conference after contracting COVID-19. The court granted that motion and reset trial for October 16. Because the record shows that the court granted Gibbs' counsel two continuances and Gibbs provides no record citation or evidence otherwise, he has shown no error.

### C.     Courtroom Conduct

**¶28**          Gibbs argues the jury was prejudiced when members of a motorcycle group escorted his children to the witness stand and did not leave until the State instructed them to. Gibbs provides no record citations or any other evidence corroborating that this ever occurred.

## VI.     Other Arguable Issues

**¶29**          We have read and considered counsel's brief and have reviewed the record for any other arguable issues. *See Leon*, 104 Ariz. at 300. We have found none.

**¶30**          Gibbs was present and represented by counsel at all critical stages of the proceedings against him. The record reflects the superior court afforded Gibbs all his constitutional and statutory rights and conducted the proceedings consistent with the Arizona Rules of Criminal Procedure. The evidence presented at trial was sufficient to support the jury's verdict. The sentences imposed fall within the range prescribed by law, with proper credit given for presentence incarceration. The post-trial proceedings complied with applicable law. We find no error.

## CONCLUSION

¶**31** We affirm Gibbs' convictions and sentences. Defense counsel's obligations in this appeal will end once Gibbs is informed of the outcome and his future options, unless counsel finds an issue appropriate for the Arizona Supreme Court's review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On the court's own motion, Gibbs has 30 days from the date of this decision to proceed with a *pro se* motion for reconsideration or petition for review.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:      JR